Scileppi, J.
After a public bidding, the Dormitory Authority of the State of New York awarded a contract to the respondent corporation, pursuant to which it was to furnish labor and material in connection with electrical work to be installed in Dormitory G-, a new structure which was to be erected on the campus of the State University at Stony Brook, Long Island. The contract, as drawn by the Authority, contained the following arbitration provision: “ (a) All disputes between parties, as to the interpretation of this Contract, or in performance of same, except cases where the decision of the Architect is final, as hereinbefore described, • either party may demand that the matter in dispute be submitted to arbitration in accordance with provisions of the Standard Arbitration Procedure of the American Arbitration Association. This agreement shall be enforceable under the prevailing arbitration law, and judgment upon award rendered may be entered in the court having jurisdiction. It is agreed that neither' of the parties will start legal action against the other previous to the decision of the arbitrators.”
As originally agreed, the electrical work was to be completed within 540 days. However, as respondent alleges, due to delays caused by the Authority, the corporation did not complete its contract until 183 days after the original completion date. The corporation, having attempted a negotiated settlement of the dispute, finally had its claim for damages refused by the Authority. Soon after the claim was rejected, the respondent filed the instant demand for arbitration, and the Authority petitioned the Supreme Court to stay the arbitration. The stay *117 was denied, the denial was unanimously affirmed, and we granted permission to come to this court.
The principal argument advanced by the Authority is that, in carrying out a governmental function of the State of New York (education), sovereign immunity protects it from the operation of the arbitration clause which it had inserted into the contract. In short, the appellant asserts that it is identified with the State and such identity, because of sovereign immunity, shields it from the effect of the arbitration clause.
In determining whether the Authority is identified with the State, an examination must be made of the relationship between the State and the body in question (see Matter of Plumbing Assn. v. Thruway Auth., 5 N Y 2d 420; Pantess v. Saratoga Springs Auth., 255 App. Div. 426). Employing such an approach, it has been held that the Dormitory Authority ‘ ‘ is a separate body politic, for whose tortious acts the State is not responsible ” (Braun v. State of New York, 203 Misc. 563, 564); that it is “a distinct and separate political entity” (Windalume Corp. v. Rogers & Haggerty, 36 Misc 2d 1066, 1067); and that it is “ an independent corporate agency with governmental function * * * as distinguished from a mere arm of the State ” (Thompson Constr. Corp. v. Dormitory Auth., 48 Misc 2d 296, 298).
In making our independent judgment of the relationship between the State and the Authority, we direct our attention to the enabling legislation from which the Dormitory Authority, a public benefit corporation whose board consists of the Commissioner of Education, the Comptroller, the President of the State University, and four members appointed by the Regents (Public Authorities Law, § 1677), draws its life (Public Authorities Law, §§ 1675-1690 inch.).
A reading of section 1678 discloses that the Authority ha,s been given power: to sue and be sued; to have its own seal; to make its own by-laws; to appoint officers, agents and employees as well as fix their compensation; to acquire real property in the name of the State; to acquire personal property for its own corporate purposes (see, also,' § 1680, subd. 2, par. c); to enter contracts and execute instruments necessary for its purposes, subject only to the State Budget Director’s approval as to cost; to fix and collect rentals for the use of the dormitories; and to *118 borrow money and issue negotiable bonds. In addition, section 1678 bestows upon the Authority a broad grant of power to do all things necessary and convenient to carry out its purposes. The Authority may also make loan's to educational institutions and determine the conditions thereof (e.g., payment, redemption, security, interest, etc.) (§ 1680, subd. 3, par. a). Moneys received by the Authority from an educational institution under subdivision 3 (par. a) must be deposited in separate accounts and not be commingled with other funds of the Authority (§ 1680, subd. 3, par. d). Such funds are to be paid out by checks signed by the Chairman of the Authority or by .someone designated by the Authority (§ 1680, subd. 3, par. d). The statute has also provided that the moneys of the Authority are to be maintained in its own accounts and drawn only by authorized officers, except that sums from State appropriations, sale of bonds, and reserve funds are to be paid to the Comptroller, as agent of the Authority, not to be commingled with other funds and to be retained in a separate bank account (§ 1681, subds. 1, 2). Funds so retained by the Comptroller are to be disbursed by him on requisition of a person authorized by the Authority (§ 1681, subd. 2). Finally, the State is not liable on the bonds or on other obligations of the Authority which are all payable only out of Authority funds (§ 1683).
Considering and weighing all the above powers, functions, and obligations, it is clear that this Authority, enjoying a separate existence, transacting its own business, hiring and compensating its own personnel, is not identical with the State (see Matter of New York Post Corp. v. Moses, 10 N Y 2d 199; Matter of Plumbing Assn. v. Thruway Auth., 5 N Y 2d 420, supra).
Assuming for the moment the validity of the Authority’s argument that it is identified with the State, we hold that the State itself is not insulated against the operation of an arbitration clause in a contract because the power to contract implies the power to assent to the settlement of disputes by means of arbitration (see Campbell v. City of New York, 244 N. Y. 317, 331; People ex rel. Benedict v. Supervisors, 24 Hun 413, 418; Brady v. Mayor of Brooklyn, 1 Barb. 584, 590; see, also, Merritt-Chapman & Scott Corp. v. Public Utility Dist. No. 2, 319 F. 2d 94, 108; State Highway Dept. v. MacDougald Constr. Co., 189 *119 Ga. 490; State ex rel. M. E. Murphy Co. v. Donahey, 98 Ohio St. 442).*
Therefore, appellant, even if it were identified with the sovereign, would not he shielded against the operative effect of the clause. Consequently, the stay was properly denied below.
Other allegations of error were considered and found to he without merit.
The .order appealed from .should be affirmed, with costs.

 In this connection, the words of. Judge Earl, written in 1882, are of relevance: “ The sovereign can contract and has very many occasions to do so; it can build canals and public buildings, and engage in public works, and in carrying forward its projects it makes use of the instrumentalities which individuals use.for the same purposes. It must be governed by the same rules of common honesty and justice which bind individuals. It is for its interests that its contracts should be binding upon all parties thereto. If it can at pleasure violate or abandon its contracts, in the absence of any stipulation authorizing it to do so, there will be such uncertainty and risk attending all its contracts that it will go into the market for work and materials at a ’great disadvantage.
As was well said by Judge Allen, in People v. Stephens (71 N. Y. 549), There is not one law for the sovereign and another for the subject, but when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, whenever the contract in any form comes before the courts, the rights and obligation of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law, and the sovereign is merged in the dealer, contractor and suitor.’ ” (Danolds v. State of New York, 89 N. Y. 36, 44).
The above words, suitable then, are ’generally even more appropriate today when the State qua State is becoming increasingly involved in what were once considered private sectors of the economy.