### In re CRAFT ARCHITECTURAL METALS CORP.

### No. CV 89–2527.

United States District Court,
E.D. New York.

Oct. 13, 1989.

---

James J. Tansey, Washington, D.C., Berkman, Henoch, Peterson, Kadin, Peddy, and Scarcella, Garden City, N.Y., for debtor.

Plunkett & Jaffe, by Kevin J. Plunkett, New York City, for claimant.

Christine Black, Garden City, N.Y., U.S. Trustee.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

The debtor in this bankruptcy proceeding, Craft Architectural Metals Corp. ("Craft") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 30, 1987. At the time the petition was filed, Craft was involved in litigation with the Dormitory Authority of the State of New York ("DASNY") in New York State Supreme Court. That litigation arose out of construction work which Craft had performed for DASNY pursuant to a contract entered into on December 11, 1974. In 1988, on the theory that the dispute could be resolved faster than in the state court, Craft filed an adversary proceeding for that same dispute in the Bankruptcy Court. The litigation in New York State Supreme Court is still pending.

Currently before this Court is Craft's opposition to a report and recommendation by the Honorable Cecelia H. Goetz, United States Bankruptcy Judge, dated July 7, 1989. In that recommendation, Judge Goetz stated that this Court should "exercise its discretionary power to abstain voluntarily from hearing this proceeding unless it should develop that the pending state action involving the same dispute is not adjudicated within a reasonable time." Recommendation of Bankruptcy Judge Cecelia H. Goetz, Case No. 087–70080–21, 115 B.R. 426 dated July 17, 1989. For the reasons stated below, this Court accepts Judge Goetz's recommendation and abstains from hearing this proceeding to allow the action to continue in the state forum.

### I.

As mentioned above, the dispute between Craft and DASNY arose out of construction work Craft had performed for DASNY. The complaint claims breach of contract and related torts, and seeks over four million dollars in compensatory damages and one-half million dollars in punitive damages. Craft is no longer an operating company, and according to Judge Goetz's report, aside from providing funds for payment to Craft's creditors, any recovery in the cause of action against DASNY will have no impact on the future of the company or on the reorganization proceeding.

In an order dated July 17, 1989, Judge Goetz determined that the adversary proceeding was a non-core proceeding, indicating that the Bankruptcy Court could not hear it unless the parties consented thereto. Recommendation of Judge Goetz, *infra*, at 429. DASNY advised the Bankruptcy Court that it would not consent. As Judge Goetz points out, pursuant to 28 U.S.C. Section 1334(c)(2), mandatory abstention by the Bankruptcy Court would have applied in this case but for the single fact that neither party requested it. 28 U.S.C. Section 1334(c)(2). Absent such a request, the Bankruptcy Court considered the circumstances of the case and opted to recommend voluntary abstention to this Court so that the dispute, which is based upon a state law cause of action and involves only questions of state law, could be adjudicated in the state court where it is pending.

### II.

As recently set out by this Court, the standard of review is governed by Rules 5011 and 9033 of the Bankruptcy Rules. *See In re Gibson and Cushman Dredging Corp.*, 100 B.R. 634 (1989). In addition to providing for *de novo* review of the report and recommendation of the Bankruptcy Judge, the Rules state that this Court may "accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Bankr.R. 9033(d).

As indicated above, Judge Goetz was faced with a proceeding which in many ways was ripe for mandatory abstention under 28 U.S.C. Section 1334(c)(2). That section reads:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall* abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise.

28 U.S.C. Section 1334(c)(2) (emphasis added). Since no motion was in fact filed, the Bankruptcy Court nonetheless recommended that this Court voluntarily abstain from hearing this case pursuant to 28 U.S.C. Section 1334(c)(1), which states that:

> [n]othing in [Section 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. Section 1334(c)(1).

Judge Goetz's thoughtful analysis was based upon important factors militating towards abstention. Inasmuch as the only objecting party, Craft, premises its objection to the Bankruptcy Court's recommendation solely on the issue of a timely resolution in state court, that is the only issue this Court will address. It is to be noted that Judge Goetz's opinion makes clear the burden hearing this litigation would place on the resources of the Bankruptcy Court. Moreover, the Judge stated in her report that the hearing of a case of such "magnitude would have to be tried piecemeal, in the interstices of the Court's daily work, as time permitted, squandering the time of witnesses and counsel, neither of whom are Suffolk residents." Recommendation of Judge Goetz, *infra*, at 431.

Compounding the above stated scenario is the fact that both sides advised the Bankruptcy Court that a long trial was anticipated. In fact, Judge Goetz herself indicated that the trial seemed likely to take approximately twenty weeks. In addition, there is the strong possibility that a rehearing in this Court might have been necessary inasmuch as credibility was "apt to be decisive" according to the parties. This would be necessary in order to ensure the parties their constitutional rights to a determination by an Article III Judge. Even review alone of the proceedings by this Court, absent any new evidence, was "bound to be time-consuming and burdensome," according to Judge Goetz. Recommendation, *infra*, at 430.

Although the Court notes that Craft opposes the abstention, claiming that the state trial will be unduly delayed, DASNY has filed a special preference, pursuant to Section 3403(a)(1) of the New York Civil Practice Law and Rules, in the State Supreme Court. This trial calendar preference should reduce the time it takes for the case to reach trial. Although Craft replies that even with such a preference it may still take approximately one year to get to trial in the state forum, in light of the circumstances, and the risk that rehearing by this Court may be necessary, this Court finds that the time it may take to try this case in state court does not appear to be unreasonable. In so finding, the Court observes that this will allow the case to proceed to one final resolution. This conclusion is even more compelling in view of the other factors militating toward abstention, as thoroughly discussed by Judge Goetz. *See* Recommendation of Judge Goetz, *supra*.

## CONCLUSION

Pursuant to 28 U.S.C. Section 1334(c)(1), this Court adopts the Recommendation of United States Bankruptcy Judge Cecelia H. Goetz and exercises its discretion to abstain from hearing this proceeding, allow-

ing the case to proceed in the New York Supreme Court where it is pending.

SO ORDERED.

## OPINION AND RECOMMENDATION TO THE DISTRICT COURT

CECELIA H. GOETZ, Bankruptcy Judge:

Craft Architectural Metals Corporation ("Craft") filed a voluntary petition under Chapter 11 on January 30, 1987. At the time it filed it was engaged in litigation in the New York courts with the Dormitory Authority of the State of New York ("DAS-NY"). The litigation arose out of construction work which Craft had performed for DASNY with respect to Manhattan Community College. The work had been performed pursuant to a written contract entered into on December 11, 1974. Craft's work had ceased on the project sometime prior to February 22, 1983, long before it filed for relief under Chapter 11.

According to what the parties have advised the Court, it was decided in 1988 that the dispute could be resolved faster in the bankruptcy court than in the state courts. As a result Craft filed an adversary proceeding in this Court. The litigation in New York's Supreme Court is still pending.

Craft is no longer an operating company. It has filed a plan of liquidation which still has to be confirmed. Except that recovery in the cause of action against DASNY will provide funds for distribution to Craft's creditors, it will have no effect on the future of the company or on the reorganization proceeding.

### The 1984 Amendments

The Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), enacted to meet the constitutional defects found in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("*Marathon*") in the broad jurisdiction originally given the bankruptcy courts did so by limiting the nature of the bankruptcy proceedings which a bankruptcy judge—a non-Article III judge—can hear and finally deter-

mine and putting final decision making authority with respect to such proceedings in the District Court, an Article III court. *In re Arnold Print Works, Inc.*, 815 F.2d 165, 169–70 (1st Cir.1987); *Federal Deposit Insurance Corp. v. Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir.1988); *In re Arkansas Communities, Inc.*, 827 F.2d 1219, 1221 (8th Cir.1987); *In re Wood*, 825 F.2d 90, 92–93 (5th Cir.1987); *In re Mankin*, 823 F.2d 1296, 1301–02 (9th Cir.1987), *cert denied sub nom Munn v. Duck*, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988); *Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 162–63 (Bankr.E.D.N.Y. 1986), *aff'd* No. 86–0329, 1987 WL 47763 (E.D.N.Y. March 27, 1987); *In re Double TRL, Inc.*, 65 B.R. 993, 999–1002 (Bankr.E. D.N.Y.1986); *In re Verrazano Holding Corp.*, 86 B.R. 755, 761 (Bankr.E.D.N.Y. 1988).

28 U.S.C. § 1334(b) confers on the District Courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." All such proceedings may be referred by each District Court to that district's bankruptcy judges. 28 U.S.C. § 157(a).

However, the statute draws a sharp distinction between the authority of the bankruptcy judge in a proceeding which arises *under* or *in a case* under title 11 and in one which is merely *"related to"* a case under title 11. 28 U.S.C. § 157(b), (c).

28 U.S.C. § 157(b)(1) authorizes bankruptcy judges to hear and determine "all cases under title 11 and all core proceedings arising under title 11" which are referred to them. In such cases their orders and judgments are subject to review only under 28 U.S.C. § 158 which provides that appeals shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts. 28 U.S.C. §§ 157(b)(1), 158. This means that their findings are to be accepted unless clearly erroneous.

What is, or is not, a core proceeding is not defined, but various types of proceedings are specifically listed as included in the term. They are intended to be those

proceedings "integral to the core bankruptcy function of restructuring debtor-creditor rights." 130 Cong.Rec. E1109 (Daily ed. March 20, 1984), *quoted in In re Arnold Print Works, Inc., supra*, 815 F.2d at 167.

A bankruptcy judge may hear a proceeding which is not a core proceeding but that is otherwise related to a case under title 11. 28 U.S.C. § 157(c)(1). However, he does not determine such a proceeding, but merely submits proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). Any final order or judgment is to "be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." *Id.*

Bankruptcy Rule 9033, modeled on Fed. R.Civ.P. Rule 72, lays down the following standard for *de novo* review:

> The district judge shall make a *de novo* review upon the record or, *after additional evidence*, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, *receive further evidence*, or recommit the matter to the bankruptcy judge with instructions. (emphasis added)

The parties, however, may, if they so elect, permit the bankruptcy judge to hear and determine a non-core proceeding just as he would a core proceeding. 28 U.S.C. § 157(c)(2). With the consent of all the parties, the district court may refer a non-core case to a bankruptcy judge to hear and determine and to enter appropriate orders and final judgments subject to review under 28 U.S.C. § 158, meaning the "clearly erroneous" standard. *Id.*

28 U.S.C. § 157(b)(3) requires a bankruptcy judge to determine on the judge's own motion, or on timely motion of a party, whether a proceeding is a core proceeding or is a proceeding that is otherwise related to a case under title 11 and adds that a "[d]etermination that a proceeding is not a

core proceeding is not to be made solely on the basis that its resolution may be affected by State law." No rule as yet fixes the time for this determination to be made. It is not unusual for it to be delayed until final adjudication.

In this District all bankruptcy cases have been automatically referred to the district's bankruptcy judges pursuant to a standing Order, dated August 28, 1986. *In re Wefco, Inc.*, 97 B.R. 749, 751 (E.D.N.Y.1989).

### The Present Proceeding

Although Bankruptcy Rule 7008 requires every pleading to set forth whether the proceeding is a core proceeding or not, and if non-core, whether or not consent is given to its determination by the bankruptcy judge, the complaint filed by Craft was ambiguous as to whether Craft was claiming this matter to be a core proceeding, or not. On the one hand it alleged that it was brought pursuant to 11 U.S.C. § 542(a). 11 U.S.C. § 542(a) requires persons in possession of a debtor's property at the time an adversary proceeding is filed to turn over such property to the trustee. "[O]rders to turn over property of the estate" are specifically named as core proceedings. 28 U.S.C. § 157(b)(2)(E). Further, jurisdiction was asserted to lie because the proceeding "arises under Title 11, United States Code." In that event it would be a proceeding which this Court would finally determine. On the other hand, jurisdiction was also alleged to be based on 28 U.S.C. § 157(c) which pertains to proceedings that are not core proceedings but are otherwise related to a case under title 11, and no reference was made in the complaint to § 157(b) covering core proceedings.

Substantively, the complaint alleges a pre-petition breach of contract and related torts. The various causes of action pleaded are failure to pay the contract price pursuant to a construction contract, failure to pay for extra work, interference with the plaintiff's performance of such contract and the breach of that contract by gross negligence, acting in bad faith and intentionally causing delay, resulting in damages. Compensatory damages in the

amount of $4,748,918.35 and punitive damages in the amount of $500,000 are demanded.

The defendant's answer and counterclaim does not clarify the issue of jurisdiction, asserting no more than that the pleader lacks knowledge or information sufficient to form a belief as to the complaint's jurisdictional allegations. It, too, violates Bankruptcy Rule 7008. Because the complaint had failed to allege that the proceeding was core, or non-core, DASNY did not have to admit or deny such an allegation as required by Bankruptcy Rule 7012(b). Nor did DASNY state whether or not it consented to entry of a final judgment by the bankruptcy judge.

Up to the time of trial neither party had requested clarification of the status of the proceeding as a core, or non-core, case. Due to the cooperation of the attorneys for both parties discovery had proceeded relatively smoothly, requiring minimal interference by the Court. The only ruling of any significance made by the Court up to the date of trial was to deny a motion by DASNY to serve a third party complaint, denied on the ground that (1) the bankruptcy court lacked jurisdiction over the parties sought to be added and (2) that the motion came too late. On the eve of trial, however, DASNY moved to strike the complaint's prayer for punitive damages in the amount of $500,000. DASNY asserted that as a public benefit corporation it was not subject to treble damages. The motion raised what appeared to be an unsettled question of state law of public importance. *Rivera v. New York City Housing Authority,* 143 Misc.2d 135, 539 N.Y.S.2d 885 (N.Y.Sup.Ct.1989); *Clark–Fitzpatrick, Inc. v. Long Island Railroad Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987); *John Grace & Co. v. State University Construction Fund,* 44 N.Y.2d 84, 404 N.Y.S.2d 316, 375 N.E.2d 377 (1978); *Dormitory Authority of the State of New York v. Span Electric Corp.,* 18 N.Y.2d 114, 271 N.Y.S.2d 983, 218 N.E.2d 693 (1966).

Before undertaking to resolve that issue and embarking on a trial of the magnitude this proceeding appeared to involve, it seemed imperative to ascertain whether the parties, in fact, consented to a final determination by the bankruptcy court as their failure to raise the issue suggested. *In re Daniels–Head & Associates,* 819 F.2d 914, 919 (9th Cir.1987). The implicit consent that might earlier have been based on the parties' inaction would appear to be precluded by the 1987 Amendments to the Bankruptcy Rules requiring explicit consent in non-core proceedings. Bankruptcy Rule 7012(b); Advisory Committee Note to Bankruptcy Rule 7008. Clarification appeared to be the more urgent because this Court had reached the conclusion that the causes of action alleged by the debtor were non-core. The bankruptcy court is obligated to determine whether a proceeding is core or non-core. *In re Wefco, Inc., supra,* 97 B.R. 749; *In re Nell,* 71 B.R. 305, 311 (D.Utah 1987); *In re Marill Alarm Systems, Inc.,* 81 B.R. 119, 122–23 (S.D.Fla. 1987), *aff'd* 861 F.2d 725 (11th Cir.1988); *In re STN Enterprises, Inc.,* 73 B.R. 470, 479 (Bankr.D.Vt.1987); *In re Nanodata Computer Corp.,* 52 B.R. 334, 341 (Bankr.W.D. N.Y.1985), *aff'd* 74 B.R. 766 (W.D.N.Y. 1987).

In *In re Lion Capital Group,* 48 B.R. 329, 338 n. 15 (S.D.N.Y.1985), District Judge Goettel suggested that the determination of the bankruptcy judge as to whether a proceeding is core or non-core is itself a core proceeding and is binding on the district court subject only to conventional appellate review. *See also, Interconnect Telephone Services, Inc. v. Farren,* 59 B.R. 397 (S.D.N.Y.1986).

Taking *Marathon* as a guideline, this proceeding appears to fall outside what a non-Article III court can constitutionally decide and must, therefore, be non-core. *Marathon, supra,* 458 U.S. at 71, 102 S.Ct. at 2872.

However, there is a split of authority on the issue whether an action for breach of contract is core or non-core. *See, In re United Security & Communications, Inc.,* 93 B.R. 945, 959 (Bankr.S.D.Ohio 1988) and the cases collected there; *In re Wefco, Inc., supra,* 97 B.R. at 751–52. The under-

signed has previously held that an action for breach of a pre-petition contract is not a core proceeding, and that where there is present a bona fide dispute as to liability, it is not a turnover proceeding or a core proceeding under any subsection of 28 U.S.C. § 157(b)(2). *In re Blue Point Carpet, Inc.*, 86 B.R. 327 (Bankr.E.D.N.Y. 1988). This accords with the weight of authority. *Acolyte Electric Corporation v. City of New York, supra*, 69 B.R. 155; *In re K–Rom Construction Corp.*, 46 B.R. 745 (S.D.N.Y.1985); *In re Pied Piper Casuals, Inc.*, 65 B.R. 780, 781 (S.D.N.Y.1986); *In re Shelly's Inc.*, 97 B.R. 370 (Bankr.S.D. Ohio 1989). *But see, In re Wefco, Inc., supra*, 97 B.R. at 751–52.

As Bankruptcy Judge Holland of this Court pointed out:

A turnover proceeding can only be considered a core proceeding under Section 542(b) when its purpose is the collection rather than the creation, recognition or liquidation of a matured date [sic] ...

\*    \*    \*    \*    \*    \*

When a bonafide dispute exists as to liability involving state law, then the proceeding cannot be core under Section 157(b)(2)(E). *Marathon* [102 S.Ct.] at 2871.

In this adversary proceeding there is legitimate dispute as to whether Acolyte is entitled to recover the funds claimed due under the contract. Since a resolution of this action involves a state law determination the defendant's liability under the contract, it is a step away from a true § 542 turnover proceeding and, therefore, does not constitute a core proceeding under § 157(b)(2)(E).

*Acolyte, supra*, 69 B.R. at 171, 172.

Since neither party had requested a determination as to whether this proceeding is a core proceeding or a non-core proceeding otherwise related to a case under Title 11, the Court made such determination on its own motion and so advised the parties. The Court determined that this was a non-core proceeding, that it was a proceeding otherwise related to a case under title 11 and that it was, therefore, not a case which the Court could hear and determine unless the parties consented thereto. DASNY advised the Court that it would not consent.[1]

### De Novo Review

In view of DASNY's unwillingness to consent to a final determination by the bankruptcy court, retention of jurisdiction in this Court would necessarily have required the District Court, as an Article III court, to exercise the supervisory authority demanded by the Constitution. What this involves is still being clarified. *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir. 1984), *cert. denied* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *Matter of Campbell*, 812 F.2d 1465 (4th Cir.1987); *Littles v. Lieberman*, 90 B.R. 700, 703–04 (E.D.Pa.1988), *aff'd sub nom. Crossley v. Lieberman*, 868 F.2d 566 (3rd Cir.1989); *In re Memorial Estates, Inc.*, 90 B.R. 886, 895 n. 7, 896 n. 9 (N.D.Ill.1988).

A growing body of authority stands for the proposition that the bankruptcy judge's findings are to be disregarded where objection is taken. *In re Marill Alarm Systems, Inc., supra*, 81 B.R. 119, 124, *citing Matter of Ferris*, 764 F.2d 1475, 1478 (11th Cir.1985); *In re G & L Packing Co., Inc.*, 41 B.R. 903, 913 (N.D.N.Y.1984).

Some guidance as to what else *de novo* review involves can be found in the cases dealing with what is constitutionally required when a district court is called on to review *de novo* the findings of a magistrate who, like a bankruptcy judge, is not an Article III judge. The scope of review

---

**1.** There was a subsidiary matter which the Court explored with the parties which remains unresolved. DASNY's responsive pleadings contained a counterclaim for liquidated damages for delay. DASNY expanded on this counterclaim in its pre-trial statement claiming both actual and liquidated damages. In DASNY's pre-trial memorandum, it claimed liquidated damages of $14,500 and actual damages of $4 million. In a letter sent the Court on the eve of the scheduled trial, the counterclaim was further expanded to include backcharges of $340,-000. DASNY has never sought relief from stay for the purpose of asserting this counterclaim in this forum or anywhere else. This omission was pointed out to DASNY so that this aspect of the case can also be clarified.

is similar. *In re Sasson Jeans, Inc.*, 83 B.R. 206, 215 n. 4 (Bankr.S.D.N.Y.1988). As the Advisory Committee Note observes, Bankruptcy Rule 9033(d), establishing the procedures for review of a bankruptcy judge's findings of fact and conclusions of law in non-core proceedings, is modeled on Fed.R.Civ.P. 72(b). Fed.R.Civ.P. 72(b) governs review by the District Court of a magistrate's findings and conclusions.

"When reviewing the evidence adduced at a hearing before a magistrate, a district court must weigh the evidence for itself and make an independent determination of the dispositive issues." *United States v. Shami*, 754 F.2d 670, 672 (6th Cir.1985). At a minimum, the district court must listen to a tape recording, or read a transcript, of the evidentiary hearing. *Gee v. Estes*, 829 F.2d 1005 (10th Cir.1987); *Lo-Conte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). "Further, when a party objects to factual findings based upon conflicting evidence or testimony, the district court must clearly indicate that it is conducting a *de novo* determination rather than review under the 'clearly erroneous' standard." *Gee v. Estes, supra,* 829 F.2d at 1009.

Although the district court judge need not conduct a new hearing, he is free to do so and such course may be required where credibility is an issue. In *United States v. Raddatz*, 447 U.S. 667, 682, 100 S.Ct. 2406, 2415, 65 L.Ed.2d 424 (1980), *reh'g denied* 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179, the Supreme Court said:

While the district court judge alone acts as the ultimate decision maker, the statute grants the judge the broad discretion to accept, reject, or modify the magistrate's proposed findings. That broad discretion includes hearing the witnesses live to resolve conflicting credibility claims. Finally, we conclude that the statutory scheme includes sufficient procedures to alert the district court whether to exercise its discretion to conduct a hearing and view the witnesses itself.

Mr. Justice Blackmun who wrote a concurring opinion added:

When a matter is referred, the judge may freely reject the magistrate's recommendation. He may rehear the evidence in whole or in part. He may call for additional findings or otherwise "recommit the matter to the magistrate with instructions."

100 S.Ct. at 2417.

Ordinarily the review by an Article III court required by the Constitution should not impose an unexceptional burden on a district judge, but in this case the issues were multiple and the transcript and the exhibits which the district judge would have to read promised to be of extraordinary length. The list of proposed exhibits submitted by Craft, displaying solely the identifying number given to exhibits, ran to 13 single spaced pages with Craft reserving the right to add more. DASNY's list was equally long. In preparation for trial a witness room was filled with ten transcript files of the documents Craft was prepared to introduce.

Both sides advised the Court that they anticipated a long trial. The estimate was that it would require at least ten weeks. From this Court's experience with controversies involving construction contracts and based upon the issues set forth in the pre-trial statements of both parties, this Court thought that estimate most conservative. To this Court it seemed more likely that the case would take at least twice that time.

Furthermore, the parties had advised the Court that credibility was apt to be decisive. This carried the possibility that a rehearing in the district court might be required to ensure the parties of their constitutional right to a determination by an Article III judge. But even if no new evidence turned out to be necessary at the district court level, reading the transcript and reviewing the exhibits pertinent to the many issues involved was bound to be time-consuming and burdensome.

At this Court's level, the trial threatened to overwhelm the limited resources available. In view of its other responsibilities, the bankruptcy court is ill equipped to handle a case of this size. The undersigned is

the only bankruptcy judge sitting in Suffolk County and cannot disengage herself from her continuing responsibility for the thousand plus cases assigned to her. There is a daily, continuing stream of matters that must be decided, emergencies that cannot be postponed. This means that a case of this magnitude would have to be tried piecemeal, in the interstices of the Court's daily work, as time permitted, squandering the time of witnesses and counsel, neither of whom are Suffolk residents.

Was there any reason, therefore, to retain this case in the Federal courts when it probably could more easily and more promptly be adjudicated in the state courts where it had been pending for many years when bankruptcy overtook the plaintiff, now defunct, some time after the cause of action arose?

### Discretionary Abstention

This is exactly the kind of case in which 28 U.S.C. § 1334(c)(2) would have required mandatory abstention had either party requested it. It is a proceeding based upon a state law cause of action, related to a case under title 11 with respect to which an action could not have been commenced in a court of the United States absent bankruptcy jurisdiction, in which an action had been commenced and, presumably, could be timely adjudicated in a state forum of appropriate jurisdiction. Furthermore, only questions of state law are involved. The only reason why abstention was not mandatory was that neither party had requested it. Yet DASNY was unwilling to have the bankruptcy court hear and determine it. DASNY insisted on the dual hearing required where the bankruptcy court reaches out and takes jurisdiction over a non-Federal case solely because of its relation to a bankruptcy proceeding, but where the Constitution denies final authority to a non-Article III court.

Since neither party moved for mandatory abstention, this Court was free to try the case. However, even where abstention is not required it is not necessarily foreclosed. "[T]here is a limited discretion available to a bankruptcy court to require matters to be litigated in state courts even where jurisdiction exists in the bankruptcy court." *In re Axton*, 641 F.2d 1262, 1273 (9th Cir. 1981). *In re Shelly's, Inc., supra*, 97 B.R. 370, 371–72; *In re Wilson*, 85 B.R. 722, 726–28 (Bankr.E.D.Pa.1988); *In re Hughes*, 98 B.R. 115, 119 (Bankr.D.C.1988). 28 U.S.C. § 1334(c)(1) authorizes discretionary abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law...."

In *In re Titan Energy, Inc.*, 837 F.2d 325 (8th Cir.1988), the Eighth Circuit reversed the lower courts which had held no jurisdiction to exist, but directed the bankruptcy court to abstain from all further proceedings and to lift the automatic stay so that the matter could proceed in the state courts, declaring abstention to be "appropriate where the action could not have been commenced in federal court absent bankruptcy jurisdiction and the issues can be timely adjudicated in state court." *In re Titan Energy, supra*, 837 F.2d at 333. The Eighth Circuit quoted with approval the observation that "[w]here most of the criteria that Congress established for mandatory abstention have been met 'bankruptcy courts should give careful consideration whether it would be appropriate to exercise their discretion to abstain under Section 1334(c)(1)' *In re Futura Industries, Inc.*, 69 B.R. 831, 834 (Bankr.E.D.Pa. 1987)." *In re Titan Energy, Inc., supra*, 837 F.2d at 333 n. 14. *Accord, In re Global International Airways Corp.*, 70 B.R. 228, 232 n. 12 (W.D.Mo.1986); *In re Interamericas Turnkey Development Co.*, 94 B.R. 9, 13 (D.Puerto Rico 1988).

As in *In re Verazzano Holding Corp., supra*, 86 B.R. 755 in which Bankruptcy Judge Holland of this Court abstained from hearing a related proceeding, pursuant to 28 U.S.C. § 1334(c)(1), no diversity jurisdiction exists, no bankruptcy issue is present upon which the bankruptcy court might claim a special expertise, and the claims require interpretation of state contract and tort claims, "precisely the type of issues which the Supreme Court in *Northern Pipeline* deemed best left to state court

**432**

resolution." *In re Verazzano*, 86 B.R. at 764.

In *Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.)*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987), Bankruptcy Judge Mahoney undertook to set forth a list of factors relevant to abstention:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*See also, In re United Security & Communications Inc., supra*, 93 B.R. 945, 960; *In re Perry*, 86 B.R. 388, 389 (E.D.Pa. 1988); *In re Terracor*, 86 B.R. 671, 678 n. 18 (D.Utah 1988); *In re Shelly's, Inc., supra*, 97 B.R. 370, 372.

Judged by the factors most commonly relied upon, discretionary abstention appears appropriate here. But for Craft's subsequent bankruptcy its cause of action would have no place in the Federal courts. There is no diversity of citizenship and no federal question raised. The issues raised are all governed exclusively by state law. As in *Titan Energy, supra*, abstention would have been mandatory if requested and timely adjudication in the state forum available. Allowing the state court action to proceed will not hinder the debtor's return to business since it is already defunct. Retaining the proceeding in the Federal courts will in no way aid the efficient administration of the estate. Not only are only issues of state law involved but the question of DASNY's vulnerability to punitive damages appears to be an unsettled issue of state law on which there is no square controlling state precedent.

Judicial economy and conservation of the debtor's assets would also be served by permitting the state court, in which this matter had been pending for many years, to adjudicate it if it can do so within a reasonable period of time. Judicial economy would be served because adjudication by a state court would eliminate *de novo* consideration by two judges since the state court proceeding at the trial level would be a final adjudication. The cost of trial would also be less with one trial rather than two, a consideration important to the estate since lawyer's fees are an administrative expense which have a first priority.

Since the proceedings in this Court has brought both parties to the point where they are ready for trial and in a position to proceed as soon as the state court can hear them, abstention should not result in any significant delay. Accordingly, the Court concluded that discretionary abstention was appropriate in this non-core related proceeding in which there was no consent to a final determination by the bankruptcy court.

*Recommendation of Abstention*

The Bankruptcy Rules entrust to the bankruptcy judge, as in the best position to evaluate the grounds for abstention, the authority to pass initially on a request by a party for abstention. Bankruptcy Rule 5011(b). However, the Rules apparently deem the request one that, like non-core proceedings, requires the final determination to be made *de novo* by a district court judge since review of the bankruptcy judge's decision is explicitly made subject to review under the standards applicable to non-core proceedings. Bankruptcy Rules 5011(b); 9033.

The Rules leave a gap with respect to a *sua sponte* decision to abstain by the bankruptcy judge. Yet such *sua sponte* acts would not only appear to be within the broad authority given bankruptcy judges by 11 U.S.C. § 105, but necessary to make meaningful the fact that discretionary abstention, unlike mandatory abstention, need not be requested by a party. Since the district court will normally not have occasion to consider the desirability of discretionary abstention until it is largely academic because trial has been had, the only judge able to abstain *sua sponte* is the bankruptcy judge. Other courts have recognized *sua sponte* abstention as available. *In re Terracor, supra,* 86 B.R. 671, 677 n. 15; *In re Vallis,* 97 B.R. 124, 129 n. 1 (D.Mass.1989); (adopting report and recommendation of bankruptcy judge) *In re World Financial Services Center, Inc.,* 81 B.R. 33, 39 (Bankr.S.D.Cal.1987); *Matter of Dart & Bogue, Inc.,* 52 B.R. 594, 598 (Bankr.D.Conn.1985); *In re Coan,* 95 B.R. 87, 89 (Bankr.N.D.Ill.1988); *see also,* 1 Collier on Bankruptcy ¶ 3.01[3] at 3–74 (15 ed.1988).

That the bankruptcy judge acts *sua sponte* would not, however, appear to change the character of the decision to abstain from one that, like non-core decisions, must be finally made by the district court. *In re Container Transport, Inc.,* 86 B.R. 804, 806 (E.D.Pa.1988). Hence, this Court appears to be limited to recommending abstention and it so advised the parties. They were told that this Court was recommending to the District Court that it abstain from exercising its jurisdiction so that this dispute can be adjudicated in the state forum where it is pending. However, this Court made clear to the parties that this recommendation was predicated on the assumption that the matter would be reached for trial within a reasonable period of time. Should that not prove to be the case, the reasons dictating abstention will no longer exist. In that event it would be in the interest of justice to hear the matter in this Court regardless of the burden that will ultimately place on this Court and on the District Court. "Permissive abstention requires the reorganization court in exercising its discretion to maintain ongoing supervision over these state court cases to ensure that disposition of no claim is unduly delayed because of the forum in which it is pending." *In re White Motor Credit,* 761 F.2d 270, 275 (6th Cir. 1985), quoted by the Eighth Circuit in *In re Titan Energy, Inc., supra,* 837 F.2d at 334 n. 16.

A Recommendation to the District Court consistent with this Opinion is being issued concurrently.

DATED: Hauppauge, New York, July 17, 1989.