**In re SHOP & GO, INC., Debtor.**

**SHOP & GO, INC., Plaintiff,**

**v.**

**D.K. PATTERSON CONSTRUCTION COMPANY, INC., et al., etc., Defendants.**

**Adv. No. 90–0144.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 14, 1991.

**916**

Joseph S. Jackson, and David B. Weinstein, Taub & Williams, P.A., Tampa, Fla., for Shop & Go, Inc.

David C. Beers, Beers, Jack & Tudhope, Orlando, Fla. and William W. Chastain, Trapp, Chastain and Uiterwik, Tampa, Fla., for D.K. Patterson Const. Co., Inc.

James L. Woodman, Smalbein, Johnson, Rosier, Bussey, Rooney & Ebbets, P.A., Rockledge, Fla., for Tampa Oil Equipment, Inc.

## BANKRUPTCY COURT'S DECISION ON MOTIONS FOR REMAND AND FOR ABSTENTION

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This state court civil action, removed to this court, came on for consideration of motions for remand and for abstention filed by the defendants, D.K. Patterson Construction Co., Inc., and Tampa Oil Equipment, Inc.[1] Pursuant to this court's order of initial procedures upon removal, the parties have briefed the motions. The court will hear and determine the motions on the papers, having concluded that oral argument would not be helpful.

### Facts

In January, 1988, the plaintiff, Shop & Go, Inc., filed a civil action in the Circuit Court for Brevard County, Florida, against defendants, D.K. Patterson and Tampa Oil. The civil action sought damages for breach of contract, breach of warranty, negligence, and statutory violations in the approximate amount of $1 million. Plaintiff alleged that these damages resulted from a leak in a gasoline storage and dispensing system located at the plaintiff's convenience store. Specifically, plaintiff alleged that D.K. Patterson was the general contractor and that Tampa Oil was the subcontractor that constructed and installed the gasoline storage and dispensing system at the convenience store. Plaintiff further alleged that the system failed, causing contamination to the environment. Under state environmental law, plaintiff contends, it is obligated to clean up the contamination, and plaintiff seeks recovery of these expenses from these defendants.

The parties litigated the action in state court. In November, 1988, the state court entered an order granting the plaintiff's motion for summary judgment on the issue of D.K. Patterson's liability. D.K. Patterson took an appeal, although the Florida appellate court later dismissed the appeal for D.K. Patterson's failure to file its initial brief. The state court also dismissed Tampa Oil as a defendant in the main action; Tampa Oil is therefore only a party to D.K. Patterson's third party action against it.

The state trial court scheduled a pretrial conference for a date in April, 1990. The parties filed their pretrial statements in compliance with the court's pretrial conference order. On the parties' joint motion, the state court continued the pretrial conference so the parties could complete their discovery. In granting the joint motion for continuance, the trial judge ordered that the case would "be reset for pretrial and trial on notice for trial being filed by counsel." The parties were then estimating that trial of the case would take from two days to one week; the trial was to be a non-jury trial, as no party had demanded a jury.

In May, 1990, about a month after the state court entered this order of continuance and some 28 months after the plaintiff filed the civil action in state court, the plaintiff filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

---

**1.** Each defendant has filed a motion entitled "motion for remand." Each motion, however, seeks both remand and abstention relief. The court will therefore treat the motions on their merits rather than merely on the basis of their titles.

District of Arizona. Apparently acting under the mistaken belief that the automatic stay provided by Section 362 of the Bankruptcy Code stayed the plaintiff/debtor in its prosecution of this civil action, D.K. Patterson then filed a suggestion of bankruptcy in the state court action. Little, if anything, occurred of record in the state court until August when the plaintiff/debtor removed the civil action to this court. Upon removal, the defendants promptly filed their motions to remand the case to state court pursuant to the provisions of 28 U.S.C. § 1452(b) and for this court to abstain from hearing the state court action pursuant to the provisions of 28 U.S.C. § 1334(c).

## Discussion

■ This court has original but not exclusive jurisdiction of the state court action because it is a civil proceeding "related to" the plaintiff/debtor's bankruptcy case pending in the District of Arizona. 28 U.S.C. § 1334(b). Pursuant to the provisions of 28 U.S.C. § 1452(a), Bankruptcy Rule 9027, 28 U.S.C. § 157(a), the standing order of reference entered by the district court, and Local Rule 106, the plaintiff/debtor properly removed the state court action to this court and this division. Because the state court action is merely "related to" the plaintiff/debtor's Chapter 11 bankruptcy case, the state court action is a non-core proceeding that the undersigned may hear on its merits for the purpose of entering proposed findings of fact and conclusions of law to the district court which shall then enter any final order or judgment. 28 U.S.C. § 157(c)(1).

Neither the district court nor this court have any subject matter jurisdiction to adjudicate the claims alleged in the state court action other than pursuant to the court's original but not exclusive "related to" bankruptcy jurisdiction provided by 28 U.S.C. § 1334(b). Otherwise, there is no federal interest here. The state court action raises no federal question; it does not arise under the Constitution, laws, or treaties of the United States; it does not involve an admiralty or maritime claim; and the parties are not of diverse citizenship.

In addition, the state court action involves purely issues of state law. No federal law whatsoever is involved in the plaintiff's claims. In fact, this action could not be in federal court at all except for the pending bankruptcy case.

It further appears that there is nothing inherent in the state court action that causes it to have any unique or specific impact upon the administration of the plaintiff/debtor's bankruptcy case in Arizona. To the extent that the plaintiff/debtor seeks an affirmative recovery in the civil action, a prompt adjudication of the action will obviously be helpful to the administration of the bankruptcy case. Other than that, there is nothing special about the case that causes it to have any peculiar impact upon the bankruptcy case.

Similarly, there is no issue in the state court action that this court can uniquely or specially determine in furtherance of the administration of the plaintiff/debtor's bankruptcy case in Arizona. Were the court hearing the state court action called upon to determine peculiar bankruptcy law or other commercial law issues with which a court such as this one has expertise and familiarity, it might be said that the administration of the plaintiff/debtor's bankruptcy case would be furthered. Nothing of the sort is applicable here, however, because the state court action does not involve any such issues. Indeed, just the opposite is the case; this court has no special knowledge or expertise in the Florida environmental law and damage issues that are involved in the case.

The state court has made substantial progress in determining the issues involved. Not only has the state court determined the issue of liability, the state court is also ready, willing, and able to schedule the case for trial upon the request of the parties pursuant to the Florida Rules of Civil Procedure. Indeed, it appears that discovery is largely completed so that the matter can be set for trial promptly in state court. Nothing in the record suggests that the state court cannot or will not provide a trial date in the reasonably foreseeable future; nothing in the record suggests that

the state court will provide an unfair or unlawful forum in which to adjudicate this dispute.

The docket conditions existing in this court preclude a prompt and efficient determination of the state court action here. This congestion has resulted in a substantial backlog in the hearing of cases, matters, and proceedings. The court's calendar does not have large blocks of time to conduct trials of the sort and of the duration required in the state court action. As it is now, the court regularly holds trials on federal holidays and on Saturdays because these are usually the only available blocks of time needed for trials. The court presently has adversary proceedings scheduled for trial through January, 1992, and is not scheduling any new trials in adversary proceedings. Currently, the court has over 60 adversary proceedings that are at issue and ready to be set for trial; the court has not set them for trial, however, because there is no time available on the calendar to try them.

Parenthetically, the court will further note that, under the bankruptcy court weighted case measurement and time study system recently developed by the Federal Judicial Center and used by the Administrative Office of the United States Courts, this district should have had eight bankruptcy judges since at least 1990 rather than the four currently authorized and in service. With this division having roughly one quarter of the district's case load, we plainly need two or more judges here rather than one. In addition, using June 30, 1990, figures, the national average of pending cases per authorized bankruptcy judgeship was 2,493. By way of contrast, there were then pending in this division 5,788 cases, or 232 percent of the national average. Since then, the situation has only grown worse. On February 28, 1991, there were 6,356 cases pending in this division, an increase of almost ten percent since only last July. Based upon published reports, the situation is no better in the district court, where that court has indefinitely ceased conducting civil trials because of its massive backlog of criminal cases.

The court's inability to try the state court action in the reasonably foreseeable future is further illustrated by the delay suffered in determining these pending motions. These motions were filed in August, 1990, and have been under advisement for months. The court's workload and priorities have simply not permitted an earlier determination. Frankly, the court has advanced this matter over many others that have been under advisement longer simply because of the recent filing by one of the defendants of an "emergency motion" to require the plaintiff/debtor to participate in a state environmental early detection incentive program as a means of mitigating the plaintiff/debtor's damages. But for that claim of emergency, this case would continue to wait its turn like the many other matters already in line ahead of it.

Because this court's docket congestion does not permit it to determine the merits of the state court action in any reasonably foreseeable time in the future, leaving the state court action pending here will affirmatively harm the administration of the plaintiff/debtor's bankruptcy case now occurring in Arizona. The plaintiff/debtor's claim will continue to remain undecided. The administration of the bankruptcy case will be furthered if the state court action proceeds in state court where it can be determined in the near term.

In short, all equitable grounds weigh in favor of permitting the state court to continue handling this state court action where a speedy and just determination can be had. Although this court should exercise its discretion carefully and should defer to other courts when this court has jurisdiction only in extraordinary situations, this is such an extraordinary situation. Plainly, deferring to the state court here is what is best to ensure an economical and expeditious administration of the debtor's estate. The plaintiff/debtor initially chose the state court forum and litigated there for some 32 months before bringing the action here. The plaintiff/debtor can suffer no harm by being required to continue the litigation to conclusion there. There is even less reason for this court to adjudicate the third party action between D.K. Patter-

son and Tampa Oil. The plaintiff/debtor is not a party to that action, and the plaintiff/debtor has no direct claim against Tampa Oil.

### Motion for Remand

■ A motion to remand a civil action to the state court from which it was removed pursuant to the provisions of 28 U.S.C. § 1452(b) is to be heard by the bankruptcy court for the purpose of making an appropriate report and recommendation to the district court.[2] Bankruptcy Rule 9027(e). This order shall constitute my report and recommendation for disposition of the motion.

■ In deciding whether to remand an action under 28 U.S.C. § 1452(b), the court weighs many considerations, including judicial economy, comity and respect for state court capabilities, the effect on the administration of the estate, the effect of bifurcating claims and parties, and the prejudice to other parties involved. *Western Helicopters, Inc. v. Hiller Aviation, Inc.*, 97 B.R. 1, 2 (E.D.Cal.1988); *Allen County Bank & Trust Co. v. Valvmatic International Corp.*, 51 B.R. 578, 582 (N.D.Ind.1985). As the discussion above reflects, consideration of these factors clearly weighs in favor of remand. Contemporaneously, the court is therefore entering a recommended order granting the motion and remanding the civil action to the state court.

### Motion to Abstain

■ A motion for abstention pursuant to the provisions of 28 U.S.C. § 1334(c) is to be heard by the bankruptcy court for the purpose of making an appropriate report and recommendation to the district court.[3]

Bankruptcy Rule 5011(b). This order shall constitute my report and recommendation for disposition of the motion.

Mandatory abstention under Section 1334(c)(2) requires several elements: (1) there must be a timely motion for remand, (2) the claim must be based on state law, (3) the proceeding must be related to a case under the Bankruptcy Code, (4) the proceeding must not have arisen under the Bankruptcy Code, (5) jurisdiction must lie only under the court's bankruptcy jurisdiction, 28 U.S.C. § 1334, and (6) the action must already have been commenced and can be timely adjudicated in state court. *U.I.U. Health and Welfare Fund v. Levit (In re Futura Industries, Inc.)*, 69 B.R. 831, 834 (Bankr.E.D.Pa.1987). All of these factors are present here.

■ There is a split of authority on the question of whether the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) apply to a civil action removed from state court pursuant to the provisions of 28 U.S.C. § 1452(a), as this one has been, as distinguished from a proceeding originally commenced in this court. *See*, for example, on the one hand, *In re 666 Associates*, 57 B.R. 8, 12 (Bankr.S.D.N.Y.1985), and on the other hand, *In re Chiodo*, 88 B.R. 780, 784 (W.D.Tex.1988). The court is not required to decide that issue, however, because the criteria for mandatory abstention under Section 1334(c)(2) are themselves among the criteria the court can consider in weighing the question of discretionary abstention under Section 1334(c)(1). *In re Futura, supra; In re Craft Architectural Metals Corp.*, 115 B.R. 423, 431 (E.D.N.Y. 1989). In addition, the court should apply the same reasoning when deciding discre-

---

**2.** Public Law No. 101–650 (Judicial Improvements Act of 1990) amended 28 U.S.C. § 1452(b). It appears therefore that, for cases filed on or after December 1, 1990, a motion to remand is to be decided by the bankruptcy court with the entry of a final order as to which appellate review will lie in the district court. The statutory amendment thus appears to supersede the contrary provisions of Bankruptcy Rule 9027(e). As this case was filed before December 1, 1990, the court is following the old procedure in making a report and recommendation rather than in entering a final order.

**3.** See note 2, *supra*. Public Law No. 101–650 also amended 28 U.S.C. § 1334(c)(2). It appears that for cases filed on and after December 1, 1990, a motion for abstention is also to be decided by the bankruptcy court with the entry of a final order, the contrary provisions of Bankruptcy Rule 5011(b) thus having been superseded. As these amendments do not apply to this case, the court is following the old procedure here.

tionary abstention under Section 1334(c)(1) as it applies in deciding mandatory abstention under Section 1334(c)(2). *Sweeney v. Citicorp Person–to–Person Financial Center, Inc. (In re Sweeney )*, 49 B.R. 1008, 1010 (N.D.Ill.1985).[4] Factors the court may also consider when deciding abstention questions include: (1) the effect on the administration of the estate; (2) the extent of the state law issues; (3) the difficulty of the state law questions; (4) the location of related proceedings; (5) the jurisdictional bases; (6) the degree of remoteness; (7) the feasibility of enforcement; (8) the burden on the court's docket; (9) the presence of forum shopping; (10) the right to jury trial; and (11) the presence of non-debtor parties. *In re Craft, supra.*

As explained in the discussion above, these factors clearly weigh in favor of abstention. Accordingly, the court is also entering contemporaneously a separate recommended order granting the motions for abstention.

DONE and ORDERED.

---

**4.** Additionally, the court notes that the congressional policies embodied in Section 1334(c)(2) may constitute an equitable ground for remand under Section 1452(b). See, for example, *Paxton Nat'l Ins. Co. v. British American Associates, Inc. (In re Pacor, Inc.)*, 72 B.R. 927, 931 (Bankr. E.D.Pa.1987), *aff'd,* 86 B.R. 808 (E.D.Pa.1987), and *Cook v. Griffin,* 102 B.R. 875, 877 (N.D.Ga. 1989).