OPINION OF THE COURT
Edward H. Lehner, J.
The principal issue raised in these two proceedings (consolidated herewith for disposition) is whether companies engaged in the business of selling contracts to repair vehicles damaged as a result of accidents are unlawfully engaged in the business of insurance. The court holds that they are and enjoins the defendants from continuing to engage in such activities.
These proceedings were instituted by the Attorney-General and Superintendent of Insurance of the State of New York to permanently enjoin respondents, pursuant to Executive Law § 63 (12) and Insurance Law § 327, from engaging in business activities which are alleged to constitute the unlawful sale of insurance policies. Respondents Autosure, Inc., New Concept, Inc., and New Concept Maintenance, Inc. (jointly referred to as the Corporations) are the entities engaged in such activities, and the other respondents are alleged to be agents, principals, officers, directors and employees of the Corporations.
In addition to requesting a permanent injunction, petitioners also seek restitution of amounts collected from consumers, civil penalties pursuant to Insurance Law §§ 1102 and 2117 (g), and costs pursuant to CPLR 8303 (a) (6).
In the suit against New Concept there are cross motions (a) on behalf of an individual respondent, Angelo Olivieri, to dismiss because he asserts that he is not a principal and only *548 an employee of the corporation, and (b) on behalf of respondents to transfer the action to Suffolk County.
FACTS
The Corporations are engaged in the business of selling to automobile owners, for a fee, the right to have collision damage to their vehicles repaired upon payment of only a deductible, the amount of which is agreed upon at the time of the sale of the contract. The Corporations are not the sellers of the vehicles. To obtain the benefit of the contract, a customer is required to have his automobile repaired at designated facilities. The contracts are sold through agents and brokers and generally at a cost lower than the premium charged by licensed insurers for similar collision coverage.
Petitioners claim that the business of the Corporations constitutes insurance and since they are not licensed their activities should be enjoined.
Although there may be an immediate benefit to consumers through lower rates for collision protection, petitioners assert that because the Corporations have engaged in the insurance business without obtaining a license and subjecting themselves to the regulatory mechanisms of the Insurance Department, and the concomitant requirements for the maintenance of reserves as protection against future losses, consumers who deal with such respondents are unprotected against the possible future insolvency of these businesses.
Respondents contend that these are merely service contracts and that, because of the high cost of insurance, they fulfill a need to a significant segment of society. They also assert that there have been no complaints to the Insurance Department and since there has been no abuse there is no need for regulation. It is asserted that the only complainers are the insurance companies, who object to being undercut on price.
The question thus presented is whether these concerns are engaged in the insurance business.
THE STATUS
Insurance Law § 1101 (a) (1) defines an "[insurance contract” as: "any agreement or other transaction whereby one party, the 'insurer’, is obligated to confer benefit of pecuniary value upon another party, the 'insured’ or 'beneficiary’, dependent upon the happening of a fortuitous event in which the *549 insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event.”
The term "[f]ortuitous event” as used above is defined in Insurance Law § 1101 (a) (2) as: "any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party.”
DISCUSSION
Initially it is observed that the contracts involved here are clearly distinguishable from agreements by sellers of merchandise to repair defects, as there the work to be done is as a result of a problem in the quality of the goods, and not the result of an unforeseen event. (See, e.g., Electronic Realty Assoc. v Lennon, 94 Misc 2d 249 [Sup Ct, Dutchess County 1978], mod on other grounds 67 AD2d 997 [2d Dept 1979], lv denied 47 NY2d 705.)
Nor is it claimed that the repair is merely incidental to another business. (See, e.g, Higger v Radziminsky & Zeger, 8 AD2d 967 [2d Dept 1959] [contract requiring the replacement of burned out light bulbs held "merely incidental” to the business of servicing fluorescent fixtures and thus not insurance].)
In Ollendorff Watch Co. v Pink (279 NY 32 [1938]) a seller of watches agreed to replace, without additional cost, any watch purchased from it which was lost within a year through burglary or robbery. In interpreting the common law (the definition of an insurance business not having been codified until 1939), the court held this to be an insurance contract.
In Matter of Feinstein (Attorney-General) (36 NY2d 199, 208 [1975]) it was observed that a lateral reading of the Insurance Law "disregarding its sense and purpose” might indicate that a plan for prepaid legal services (under which the happening of a fortuitous event could result in the requirement for the rendition of services) constituted the business of insurance. However, the court, noting that the plans were "operated by benevolent or charitable organizations”, and that there is supervision by the Appellate Divisions, concluded (p 209) that they "fall outside the spirit and purpose of the existing provisions of the Insurance Law”.
Here, however, the Corporations are in business for a profit, and as a primary business sell contracts to repair damages caused, not by defects in the vehicles, but rather from unfore *550 seen events, i.e., accidents. The contracts sold by the Corporations offer the same protection as provided by the collision coverage in an insurance policy. In fact, in their advertising, New Concept refers to its business as "the insurance alternative”.
In light of the nature of the business of the Corporations, it is evident that they are in the business of insurance. Thus, petitioners are entitled to have respondents permanently enjoined from entering into, or renewing, any contract to engage in the business referred to herein after service of a copy of the order to be entered hereon, unless and until they are licensed by the Insurance Department to engage in such business.
RESTITUTION
In the motions petitioners seek restitution of all "amounts collected from all consumers” who have dealt with the Corporations. This would be a rather harsh remedy as the Corporations’ customers have received the benefit of the protection they purchased, with there being no indication that any consumer has had a complaint with respect to these contracts. Moreover, since it does not appear that any sums have been collected for more than a year in advance, the Corporations will be permitted to fulfill their obligations under existing contracts. If in fact any contract has been entered into for a period in excess of one year, the Corporations shall be required to forthwith refund to the customer all sums applicable to a period more than one year from the date hereof.
PENALTIES AND COSTS
Since it appears that petitioners have known that the Corporations have been engaged in this business for some time, and that a number of entities not before this court are now also engaged in the industry, and since the court does not believe that the defendants have intentionally violated the Insurance Law, the requested penalties for violation of the law, which under section 1102 (a) are $1,000 for the first violation and $2,500 for each subsequent violation (applicable to the Corporations), and which under section 2117 (g) are $500 for the first offense and $500 for each subsequent month of continual violation (applicable to the individual defendants), are waived.
However, under CPLR 8303 (a) (6) which authorizes a discretionary award of costs to the Attorney-General of up to $2,000 *551 in an action commenced by him under Executive Law § 63, the court awards the sum of $2,000 costs against New Concept, Inc. and New Concept Maintenance, Inc. (jointly and severally), and a like sum against Autosure, Inc.
In view of the foregoing, the cross motion of defendant Olivieri is denied as moot and the cross motion to transfer venue is denied.