THE PEOPLE OF THE STATE OF NEW YORK, by ROBERT ABRAMS, as Attorney-General of the State of New York, et al., Appellants-Respondents, v AMERICAN MOTOR CLUB, INC., et al., Respondents, and NICHOLAS NEU, Individually and as an Officer, Director, Principal, Stockholder, Agent, and Employee of AMERICAN MOTOR CLUB, INC., Respondent-Appellant.

First Department, April 9, 1992

### APPEARANCES OF COUNSEL

*Melvin L. Goldberg* of counsel *(John W. Corwin* and *Ronna D. Brown* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for appellants-respondents.

*Andrew J. Goodman* of counsel *(Marianne F. Murray* with him on the brief; *Rosner & Goodman,* attorneys), for respondent-appellant.

### OPINION OF THE COURT

Asch, J.

For many years respondent Nicholas Neu has assumed as many corporate shapes as "the old man of the sea" in his attempt to avoid the controls imposed by the Insurance Law. Nevertheless, the Attorney-General and Superintendent of Insurance have been persistent in seeking to prevent respondents from evading the State system of licensing and regulations. To date, the State of New York has been as successful as Sisyphus, the mythical king of Corinth, condemned in Hades to move a heavy boulder up a steep hill, only to have it roll down as he approached the top.

The respondent American Motor Club, Inc. (AMC) is just one of the several corporate forms which Neu has assumed in order to achieve his purpose. He concedes that AMC which "ran through my veins" was totally controlled by him until March of 1989.

This matter has been before this court on three prior appeals. The background of the alleged unauthorized insurance business goes back even further, to at least 1980.

In 1980, the Insurance Department approved a modified American Automobile Consumer Repair Agreement Ltd. (hereinafter referred to as AACRAL) as not constituting an insurance contract, since the consumer had to pay the full cost of repair, rather than only a deductible as originally proposed.

Neu, with other individuals, then organized American Automobile Road Damage and Vehicle Assistance Repair Korp.,

Inc. (hereinafter referred to as AARDVARK) marketing contracts somewhat similar to the approved AACRAL contract. However, as this was marketed through insurance brokers, the Attorney-General brought a proceeding seeking to require Neu and others to disclose that this was not insurance and that under the contract the consumer was responsible for the full cost of the repair. A consent judgment was entered requiring such disclosure. AARDVARK, in short order, went out of business.

AACRAL then changed its standard form contract to provide consumers have to pay only a deductible when a claim was made, not the full cost of repairs. The Insurance Department issued a cease and desist order alleging that the contracts constituted insurance under Insurance Law § 1101, as consumers were provided with a pecuniary benefit upon the happening of a fortuitous event. AACRAL was successful in challenging the cease and desist order solely on the procedural grounds that it was not properly issued (see, American Auto. Consumer Repair Agreement v Corcoran, 108 AD2d 547). In that case we did not reach the issue of whether such contracts constituted insurance.

Neu and co-respondent herein, John Senise, then began selling American Motor Club, Inc. prepaid collision service contracts, which represented that they were not insurance. However, the consumer paid an annual membership fee and selected a "service fee" of either $250 or $500 at the time of becoming a member. In the event of damage or loss to the consumer's motor vehicle, the consumer would be made whole upon payment of only the "service fee".

In October 1985, the Attorney-General and the Superintendent of Insurance commenced this special proceeding pursuant to Executive Law § 63 (12) and Insurance Law § 327 against the American Motor Club, Inc., and Senise only, alleging that the membership fee was a premium and the service fee a deductible and, accordingly, that respondents were conducting an insurance business without authority or a license. Petitioners sought penalties against AMC under Insurance Law § 1102 for the unauthorized sale of insurance and against Senise under Insurance Law § 2117 for aiding and abetting the unauthorized sale of insurance; and for damages and restitution pursuant to Executive Law § 63 (12) for persistent illegality. AMC, which in its answer disclosed that Neu was president, continued to sell "insurance" during the pendency of proceedings, leading to hundreds of consumer complaints upon

denial of claims. AMC imposed a requirement of taking polygraph tests upon claimants and even then failed to pay many claimants who had successfully passed the test.

The Supreme Court granted the petition finding the AMC contract constituted insurance which was unlicensed and enjoined further sales. It denied penalties, damages or restitution against AMC or Senise on the grounds that it had not been shown they had intentionally sought to violate the Insurance Law and that some consumers had, no doubt, received some benefits from the contracts. The court also denied petitioners' motion for leave to add Neu as a party. Thereafter, the court appointed a number of successive temporary receivers who could not meet the obligations of receivership based on the dismal state of AMC's financial affairs and who sought and were granted release from such receiverships. AMC filed a chapter 11 bankruptcy petition in May 1987 and ultimately 5,000 customers filed notice of claim with the Bankruptcy Court.

The Supreme Court subsequently granted petitioners' motion for reargument and renewal and added Neu as a respondent party; found respondents had committed multiple violations of Insurance Law § 1102, penalizing them $5,001,000; found the individual respondents had violated Insurance Law § 2117, penalized them $10,500; and directed a reference as to the issue of consumer damages and restitution.

On appeal we modified to strike the $5,001,000 in penalties under Insurance Law § 1102 on grounds that the petitioners had not sought such relief in their original petition. Further, we struck the Insurance Law § 2117 penalties and liability for damages and restitution as against Neu, as he had not been given the opportunity to answer the petition at all, having been joined as a party for the first time by the same order (see, People v American Motor Club, 133 AD2d 593). However, we did find that the AMC contracts constituted unlicensed sales of insurance and that, therefore, the preliminary injunction was properly granted. Further, we upheld the $5,001,000 penalty against AMC, Senise's liability for damages and restitution, and the joinder of Neu as a respondent.

In May 1988, petitioners' motion to amend the petition to assert causes of action against Neu for violation of Insurance Law § 1102 and for fraud was denied with leave to replead. This order was affirmed by us. However, in so doing, we stated that petitioners could seek to hold Neu personally liable for

violating provisions of the Insurance Law or seek restitution from him on behalf of consumers (see, *People v American Motor Club,* 157 AD2d 455).

The petitioners then moved to amend the petition once more. The proposed amended petition detailed Neu's personal participation in AMC's operations, including denying and delaying claims and failing to cause proper repairs. It asserted that Neu had admitted that between 1985 and 1987, the AMC operation ran through him, and alleged three causes of action: (1) conducting an unlicensed insurance business in violation of Insurance Law § 1102 and thereby violating Executive Law § 63 (12) by doing such illegal activity repeatedly and persistently; (2) aiding and abetting an unauthorized insurer in violation of Insurance Law § 2117 and thereby violating Executive Law § 63 (12) by doing such illegal activity repeatedly and persistently; and (3) engaging in repeated and persistent fraudulent conduct in violation of Executive Law § 63 (12).

In a decision-order, entered July 11, 1990, the Supreme Court granted petitioners' motion to the extent of extending leave to serve a further amended petition alleging the violations of Insurance Law §§ 1101 and 1102 and Executive Law § 63 (12), and Insurance Law § 2117 and Executive Law § 63 (12), but denied it as to the proposed third cause of action for repeated and persistent fraud pursuant to Executive Law § 63 (12). The court found this third cause of action was duplicative of the first two causes of action.

After answer by Neu of the amended petition, the Supreme Court granted the petition to the extent of finding Neu liable for civil penalties under Insurance Law § 2117, issuing a permanent injunction against him and setting down for a hearing the issues of Neu's liability under Insurance Law § 1102 and the amount of restitution owed by him to consumers who suffered damages from AMC's business. It denied Neu's cross motion to dismiss the petition.

■ We find that the third proposed cause of action of the amended petition is not duplicative of the first two causes of action. The latter concerns repeated and persistent illegality under the Insurance Law, while the former (the third cause of action) concerns repeated *fraudulent* conduct. This distinction can make a significant difference in practical application. Thus, if for example, Neu declares bankruptcy (as he did in 1987, only to withdraw that petition in 1988), debts incurred by fraudulent activity may be found to be nondischargeable in

bankruptcy, while a finding of "illegal" activity would not protect consumers. Contrary to Neu's contentions, the last amended petition pleads facts amounting to fraud under Executive Law § 63 (12), not merely illegality, since pursuant to that statute, scienter is not required and false promises are sufficient *(see, State of New York v General Motors Corp.,* 120 Misc 2d 371, 374). It is alleged consumers who purchased AMC contracts did not receive the service and benefits promised by virtue of respondents' denial of valid claims, delays in processing claims and making repairs, and failure to make proper repairs. Corporate officers and directors can be individually liable for fraud if they personally participated in, or have actual knowledge of the fraud *(see, Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31; *Matter of State of New York v Wiley,* 117 AD2d 856). Thus, the proposed third cause of action is sufficient and leave to assert it should have been granted.

It appears Neu has abandoned his cross appeal from the first order, as his brief does not make any argument attacking the legal sufficiency of the first and second causes of action of the last amended petition, only against the provisions of the July 29, 1991 decree.

■ Respondent Neu contends that the court's finding of liability for restitution to consumers can only be based upon violation of Insurance Law § 2117 (aiding and abetting) since the IAS court directed a hearing as to his violation of Insurance Law § 1102, and Insurance Law § 2117 does not have restitution as a remedy, but merely provides for a $500 penalty for the first offense and an additional $500 for each month in which there is a continuing violation (with the $10,500 penalty imposed as a result of at least 21 months of doing such business here). However, this argument overlooks the fact that this cause of action further alleged that the violations of Insurance Law § 2117 itself constituted repeated and consistent illegality under Executive Law § 63 (12), pursuant to which restitution is a permitted remedy *(see, State of New York v Ford Motor Co.,* 136 AD2d 154, *affd* 74 NY2d 495). Further, this court has previously affirmed individual co-respondent Senise's liability for restitution *(People v American Motor Club, supra,* 133 AD2d 593) and found such claim for restitution against Neu himself was sufficient *(People v American Motor Club,* 157 AD2d, *supra,* at 456).

■ ■ Respondent Neu contends that the $10,500 penalty should be vacated because there was no finding by the court in its decision as to the number of months he violated Insurance

Law § 2117. However, the record sufficiently supports a finding that Neu had operational control over AMC while AMC engaged in such activities for at least 21 months, March 1985 to March 1987. Thus, it was not erroneous for the court to make this implicit finding as a prerequisite for the imposition of the penalty.

Respondent also argues that imposition of an Insurance Law § 2117 penalty was premature and should await the hearing directed on whether he was personally transacting an unlicensed insurance business in violation of Insurance Law § 1102. However, we find that the direction for a hearing as to the Insurance Law § 1102 violations was in error, *not* the summary imposition of Insurance Law § 2117 penalties *(see discussion, infra).*

Neu maintains with respect to whether there was a pattern of misleading consumers and of delays in contract performance, that he is entitled to show no greater percentage of complaints than the insurance industry norm at least prior to his March 1987 termination. However, the issue would not be relevant to Insurance Law § 2117 liability or Insurance Law § 1102 violations but only as to Executive Law § 63 (12) fraud, which we are reinstating as a cause of action and remanding for further proceedings.

█ We find that the IAS court erred in granting a hearing as to Insurance Law § 1102 issues, i.e., respondent Neu's personal participation in unlawful conduct.

No such hearing is required as to Neu's liability for penalties under Insurance Law § 1102. The IAS court applied the wrong test in finding issues of fact as to whether Neu "was conducting an insurance business in his individual capacity"; rather the issue should have been whether he personally participated in the illegal insurance business *(Matter of State of New York v Wiley, supra; Clark v Pine Hill Homes,* 112 AD2d 755 [cited by this court on the last appeal in finding petitioners' allegations sufficient]). The *Clark* case indicates the principle of officers/directors' liability for participation in wrongdoing is not limited to fraud cases (which has not yet been proven against Neu), but also applies as to negligence issues and therefore, a fortiori to the issue of liability for Insurance Law § 1102 illegality. Moreover, on the prior appeal we indicated Neu could be held personally liable for violating both Insurance Law §§ 2117 and 1102. Given Neu's prior admissions in this proceeding, it is clear, from the record

herein, that he was intimately involved in AMC operations between March 1985 and March 1987 and there is no need for such a hearing. We have examined respondent Neu's remaining contentions and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered July 11, 1990, should be reversed, on the law, to the extent appealed from, as limited by the parties' briefs, and petitioners' motion for leave to amend the petition to assert the proposed third cause of action for repeated and persistent fraudulent conduct should be granted, and the matter remanded for further proceedings with costs and disbursements payable to petitioners; the order and judgment (one paper) of the same court and Justice, entered on or about July 29, 1991 should be modified, on the law and facts, to the extent of striking paragraphs IX and X as to a hearing on the issue of Neu's liability, for civil penalties under Insurance Law § 1102, and substituting therefor, a finding of such liability and the matter remanded for further proceedings as to the amount of such civil penalties and otherwise affirmed, with costs and disbursements payable to petitioners.

MILONAS, J. P., WALLACH, ROSS and SMITH, JJ., concur.

Order of the Supreme Court, New York County, entered July 11, 1990, is reversed, on the law, to the extent appealed from, as limited by the parties' briefs, and petitioners' motion for leave to amend the petition to assert the proposed third cause of action for repeated and persistent fraudulent conduct is granted, and the matter remanded for further proceedings with costs and disbursements payable to petitioners; the order and judgment (one paper) of the same court and Justice, entered on or about July 29, 1991 is modified, on the law and facts, to the extent of striking paragraphs IX and X as to a hearing on the issue of Neu's liability, for civil penalties under Insurance Law § 1102, and substituting, therefor, a finding of such liability and the matter remanded for further proceedings as to the amount of such civil penalties and otherwise affirmed, with costs and disbursements payable to petitioners.