**In re AMERICAN MOTOR CLUB, INC., Debtor.**

**Bankruptcy No. 887–70763–260.**

United States Bankruptcy Court, E.D. New York.

Jan. 7, 1993.

See also 143 B.R. 590.

Rosner & Goodman by Marianne Murray, New York City, for Nicholas and Marie Neu.

Phillips, Nizer, Benjamin, Krim & Ballon by Louis A. Scarcella, Garden City, NY, for debtor.

Philip Irwin Arron, P.C. by Kieran Broderick, Syosset, NY, for Official Committee of Unsecured Creditor.

Robert Abrams, Atty. Gen., of State of N.Y. by Melvin Goldberg, New York City.

## DECISION ON MOTION BY NICHOLAS AND MARIE NEU DECLARING THEM PARTIES IN INTEREST AND GRANTING THEM LEAVE TO COMMENCE ADVERSARY PROCEEDINGS ON BEHALF OF AMERICAN MOTOR CLUB, INC.

CONRAD B. DUBERSTEIN, Chief Judge.

This matter comes before the Court on the motion of Nicholas and Marie Neu (jointly "the Neus") declaring them parties in interest in this case pursuant to § 1109 of the Bankruptcy Code, and granting them leave (a) to appear and commence adversary proceedings on behalf of the Debtor, American Motor Club, Inc. ("AMC" or the "Debtor"):

(i) to disallow on constitutional grounds, the claim of the New York State Insurance Department (the "Insurance Dept." or the "State") based upon a judgment entered against AMC in a proceeding commenced by the Insurance Dept. against AMC in the amount of $5,001,000 plus restitution;

(ii) against First National Life and Casualty ("First National") to collect on the policy insuring AMC for certain claims by its members in this case;

(iii) against Michael York, Sam Ford and others presently unknown for conversion

and imposition of a constructive trust upon AMC's assets held by Automobile Maintenance Contracts, Inc.–L.A., a company which they controlled; and

(b) appointing Rosner & Goodman, Esqs. as special counsel to prosecute these adversary proceedings on behalf of AMC.

For the reasons hereinafter set forth, the Neu's motions are granted in part and denied in part.

### FACTS

In 1985, the Attorney General of the State of New York, on behalf of the Insurance Dept., commenced a special proceeding in the Supreme Court of the State of New York, New York County, against AMC and John Senise ("Senise"), an officer and shareholder of AMC. AMC was a New York corporation, operating as a motor club offering benefits including pre-paid collision service repair of damaged motor vehicles. The Insurance Dept. viewed this benefit as unlicensed insurance and sought to enjoin the sale of AMC's pre-paid collision service contracts (the "AMC contract"), impose sanctions pursuant to N.Y. Ins. Law § 1102 (conducting an unlicensed insurance business) and § 2117 (the sale of unauthorized insurance), and for damages and restitution pursuant to N.Y. Exec. Law § 63(12) (persistent illegality).

In its initial petition (the "Petition") submitted in its special proceeding, the Insurance Dept. argued that the AMC contract constituted insurance since, under the contract, a member's only obligation for repairs was the initial annual membership fee and a fixed service fee per repair. The Insurance Dept. deemed the annual fee and service fee analogous to a premium and deductible, respectively.

AMC answered the petition and filed a cross motion to dismiss the proceeding. As a defense, AMC argued that the annual membership fee was not a premium since insurance premiums are not credited to past or future claims, or to future premiums for policy renewals, and therefore the AMC contract was not insurance.

However, on January 14, 1987, the Supreme Court of the State of New York,

New York County, decided that the AMC contract was unlicensed insurance. *People v. American Motor Club, Inc.,* No. 43148/85, slip op. (N.Y.Sup.Ct. Jan. 14, 1987). The Court enjoined further sales of the AMC contracts, but denied the imposition of sanctions, damages or restitution finding no intentional or wilful violation of the N.Y.Ins.Law. *Id.* at 2.

Upon a motion to reargue by the Insurance Dept., the Supreme Court of the State of New York, New York County, by Honorable Milton Richardson, issued a decision on April 4, 1987, that added AMC's president from February, 1985, through March 3, 1987, Nicholas Neu ("Neu"), as a party and included an imposition of a $5,001,000 fine against AMC, Neu and Senise, holding them jointly and severally liable for multiple violations of N.Y.Ins.Law § 1102. *People v. American Motor Club, Inc.,* Index No. 43148/85, slip op. (N.Y.Sup.Ct. Apr. 8, 1987) (the "Richardson Decision").

The three parties appealed that decision fixing the fine, and shortly thereafter, on May 19, 1987, AMC filed with this Court, a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

On October 29, 1987, a decision was issued by the Appellate Division, First Department, pursuant to an appeal of the Richardson Decision. *People v. American Motor Club, Inc.,* 133 A.D.2d 593, 520 N.Y.S.2d 383 (N.Y.App.Div.1987) ("AMC–I"). The Court held that Neu had been properly joined as a party, but struck the provisions that found Neu and Senise jointly and severally liable for the Fine, due to the fact that Neu had not been afforded notice of the State's intention to seek sanctions against him personally and that Senise had never been charged with violating N.Y.Ins.Law § 1102. *Id.* at 595, 520 N.Y.S.2d at 385. However, the fine was affirmed against AMC and its argument (the "AMC estoppel argument") that the AMC contract had been based upon other

contracts which had not been held to constitute illegal insurance was rejected. The Court found that "the other plans to which comparison was made differed materially and legally." *Id.* On March 31, 1988, a motion for leave to reargue was denied by the Appellate Division. *People v. American Motor Club, Inc.,* 138 A.D.2d 988, 527 N.Y.S.2d 331 (N.Y.App.Div.1988). Subsequently, a motion for leave to appeal to the New York Court of Appeals was denied on July 12, 1988. *People v. American Motor Club, Inc.,* 72 N.Y.2d 805, 532 N.Y.S.2d 755, 528 N.E.2d 1228 (N.Y.1988).

On October 20, 1988, Honorable Jacqueline Silbermann of the Supreme Court of the State of New York, New York County, issued a decision on a motion by the State for an order granting leave to amend its petition to add allegations against Neu and restraining him from disposing any assets of AMC or conducting insurance business with the State of New York. *People v. American Motor Club, Inc.,* No. 43148/85, slip op. (N.Y.Sup.Ct. · Oct. 20, 1988) (the "Silbermann Decision"). The Silbermann Decision granted a preliminary injunction restraining Neu from engaging in the insurance business through AMC during the pendency of the action, but denied the motion to amend the petition, with leave to replead. In addition, the Silbermann Decision addressed several of Neu's objections to the State's motion. Neu argued that N.Y.Ins.Law § 1101 is unconstitutionally vague in its definition of insurance [1] and that, as a result, imposing liability would constitute unfair surprise and that the AMC contract did not constitute insurance.

The Silbermann Decision rejected Neu's statutory vagueness argument and his claim of unfair surprise. The Court determined that previous litigation had established the Insurance Dept.'s intent to challenge "deductible" type insurance contracts. *Id.* at 5 (citing *American Auto. Consumer Repair Agreement, Ltd.*

---

1. Insurance contract is defined as "any agreement or other transaction whereby one party, the 'insurer', is obligated to confer benefit of pecuniary value upon another party, the 'insured' or 'beneficiary', dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event." N.Y.Ins.Law § 1101(a)(1) (McKinney 1992).

*("AACRAL") v. Corcoran*, 108 A.D.2d 547, 489 N.Y.S.2d 732 (N.Y.App.Div.1985), *People v. Autosure Inc.*, 131 Misc.2d 546, 500 N.Y.S.2d 981 (N.Y.S.Ct.1986), and *People v. AACRAL*, No. 41257/86, slip op. (N.Y.Sup. Ct. Sept. 10, 1986)).

In addition, Neu's argument that the AMC contract did not constitute insurance was rejected. The Court decided against discussing the merits of this argument since this issue had been previously decided during the proceedings related to the Richardson Decision. The Silbermann Decision noted that although the sanctions against Neu had been stricken on appeal, *see, "AMC–I"*, Neu had appeared in order to defend AMC's position. *Id.* at 6.

On January 4, 1990, the Appellate Division in *People v. American Motor Club, Inc.*, 157 A.D.2d 455, 550 N.Y.S.2d 826 (N.Y.App.Div.1990) ("AMC–II") affirmed the Silbermann Decision. In his appeal, Neu filed a motion to supplement the record or to remand the appeal in light of alleged newly discovered evidence. Neu claimed that the rejection of the AMC estoppel argument in *"AMC–I"* was predicated by an erroneous affirmation of Paul Altruda (the "Altruda Affirmation"). Paul Altruda was an attorney in the Office of the General Counsel of the Insurance Dept., who signed an affirmation on November 25, 1985, distinguishing a 1980 version of the AACRAL contract from the AMC contract. Neu argued that the Altruda Affirmation was incorrect in that it erroneously stated that the AACRAL contract required car owners to pay the full cost of repairs. He therefore contended that the Altruda Affirmation created an erroneous distinguishing factor, for it is uncontested that the AMC contract did not require such a full payment, but instead, a fixed fee established in advance. Neu's argument that the Altruda Affirmation was inaccurate was allegedly supported by a deposition of Paul Altruda (the "Altruda Deposition") taken on September 28, 1989, during another unrelated action. The Court denied Neu's motion to supplement the record or remand the appeal. *People v. American Motor Club, Inc.*, 157 A.D.2d 455, 550 N.Y.S.2d 826, 832 (N.Y.App.Div.1990).

On July 11, 1990, the Supreme Court of the State of New York, New York County, granted the State's motion to amend the petition in order to include allegations against Neu. However, the Court excluded one of three proposed causes of action against Neu for being duplicative of the other two.

Subsequently, on March 1, 1991, after service upon, and an answer by Neu, Honorable Phyllis Gangel–Jacob of the Supreme Court of the State of New York, New York County, granted the amended petition to the extent of finding Neu liable. *People v. American Motor Club, Inc.*, No. 43148/85, slip op. (N.Y.Sup.Ct. March 1, 1991) (the "Gangel–Jacob Decision"). In addition, the Gangel–Jacob Decision denied Neu's cross-motion for an order vacating the prior orders of the Richardson Decision and the Silbermann Decision, and rejected Neu's argument that the orders should be vacated pursuant to the alleged misleading affirmations submitted to the Court (the Altruda Affirmation) and newly discovered evidence (the Altruda Deposition). *Id.* at 5.

The Gangel–Jacob Decision rejected Neu's argument finding that *"AMC–II"* had already denied Neu's motion to supplement the record with the new Altruda Deposition. The Court then proceeded to entertain the issue on its merits holding that the AACRAL contract did require the car owner to pay the cost of repairs, and therefore was distinguishable from the AMC contract. *Id.* Furthermore, the Court held that Neu's argument that the N.Y.Ins.Law is vague had already been decided in the Silbermann Decision. *Id.* at 6.

Upon appeal and cross-appeal, the Appellate Division, on April 9, 1992, reversed the exclusion of the third cause of action from the amended petition. *People v. American Motor Club, Inc.*, 179 A.D.2d 277, 582 N.Y.S.2d 688 (N.Y.App.Div.1992) ("AMC–III"). Neu's appellate briefs included an appeal of the Gangel–Jacob Decision that had denied his motion to vacate the orders of the Richardson Decision and the Silbermann Decision. Although this appeal was not specifically addressed in *"AMC–III"*,

the Court rejected Neu's argument by stating, "[w]e have examined respondent Neu's *remaining contentions* and find them to be without merit." *Id.* at 282, 582 N.Y.S.2d at 693 (emphasis added). Neu appealed this decision to the New York Court of Appeals. On July 7, 1992, the Court of Appeals dismissed the appeal "upon the ground that the order appealed from does not finally determine the proceeding within the meaning of the Constitution." *People v. American Motor Club, Inc.,* 80 N.Y.2d 893, 587 N.Y.S.2d 909, 600 N.E.2d 636 (N.Y.1992).

It is to be noted that early in this case, it became apparent that none of the officers of the Debtor were continuing on in the operations of the Debtor's affairs. Consequently, an Order was entered by this Court, whereby the Official Committee of Unsecured Creditors (the "Committee") was substituted as the party plaintiff or defendant in all pending litigation concerning the Debtor and was authorized and empowered to prosecute, defend, compromise or settle, release or abandon any claim or cause of action asserted or assertable by or against the Debtor. The Committee, by its counsel, has proceeded with the ongoing liquidation of the Debtor in this Chapter 11 case in lieu of converting it to a case under Chapter 7.

On June 13, 1991, the Neus filed the present motion to be declared parties in interest and be granted leave to appear and commence an adversary proceeding on behalf of AMC to expunge and disallow a proof of claim filed by the Insurance Dept. in this Court arising out of the state court litigation.

In addition, the Neus seek leave to commence an adversary proceeding to pursue a claim against First National under Policy No. PH–1000, to liquidate that claim, and apply the proceeds to all the claims asserted by AMC members in this case. The policy covers:

(1) Total losses for motor vehicles of fee paying AMC members;

(2) Excess cost of repairs for damages pursuant to AMC's contract; and

(3) AMC's contractual liability on all prepaid collision service contracts between AMC and its members.

Finally, the Neus seek leave to commence an adversary proceeding against Michael York, Sam Ford and others for conversion and imposition of a constructive trust upon AMC's assets.

## DISCUSSION

### I. Parties In Interest

Section 1109(b) of the Bankruptcy Code states in pertinent part:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an *equity security holder,* or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b) (emphasis added).

The Bankruptcy Code defines "equity security holder" as a "holder of an equity security of the debtor." 11 U.S.C. § 101(17). Equity security is a "share in a corporation, whether or not transferable or denominated 'stock', or similar security." 11 U.S.C. § 101(16). The Neus argue that they hold 58% of the outstanding stock of AMC, and therefore are equity security holders as defined by the Code. The Neus further contend that they are "parties in interest," inasmuch as they have a significant interest in the recovery of AMC's assets due to their status as majority shareholders.

The term "party in interest" is not defined in the Bankruptcy Code. *In re Comcoach Corp.,* 698 F.2d 571, 573 (2nd Cir. 1983); *In re Village Rathskeller,* 147 B.R. 665, 669 (Bankr.S.D.N.Y.1992); *In re Johns–Manville Corp.,* 31 B.R. 965, 971 (S.D.N.Y.1983).

As stated in *In re River Bend–Oxford Assocs.,* 114 B.R. 111, 114 (Bankr. D.Md.1990), "a determination whether an entity qualifies as a party in interest should be made within the specific reorganization process context for which the determination is sought." A Plan of Reorganization (the "plan") has been proposed by the Com-

mittee. The Committee has also submitted for this Court's approval a Disclosure Statement as required by § 1125 of the Bankruptcy Code. At a hearing on November 24, 1992, this Court approved the Disclosure Statement. As appears from the Disclosure Statement, the Committee concedes that AMC has no chance of continuing operations and therefore the plan proposes the orderly liquidation of all the Debtor's assets. The plan, as proposed, is therefore a liquidating Chapter 11 plan as is permitted by § 1123(b)(4).[2] In the event the plan is confirmed by this Court, it becomes legally binding on all creditors, interested parties and the Debtor.

The plan, in conformity with the Code's priority mandate, § 507, proposes that creditors will be paid according to their classification. The plan anticipates that some classes, including the equity security holders, will receive no distribution at all since the Debtor is insolvent and that the shares of AMC owned by the Neus and any other shareholders, shall be cancelled and terminated upon the consummation of the Plan. (Creditors' Committee's Plan of Reorganization at 18).

The Creditors' Committee argues that the only conceivable alternative to the plan would be a similar distribution supervised by a disinterested trustee in bankruptcy under the provisions of Chapter 7. A Chapter 7 liquidation of AMC would be similar to liquidation under the plan in that the distribution would be made to creditors in accordance with the priorities set forth in § 507 of the Code. Within the specific context of AMC's reorganization, the Neus as "equity security holders" are therefore "parties in interest." *See, Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474 (6th Cir.1992) (to interpret the term "party" narrowly would run counter to the provisions in the Code which outline the effect of plans).

## II. Leave to Commence Adversary Proceedings

Even though the Neus may be properly classified as parties in interest, this court is of the opinion that in the best interests of the estate, justice and comity, the Neus' request to commence these adversary proceedings be denied.

### A. *Disallowance of the Insurance Department's Claim*

A proceeding to expunge and disallow the claim of the Insurance Dept. is unnecessary since it has subordinated its claim to the claims of the creditors. Inasmuch as those claims are not being fully satisfied, the State will undoubtedly receive nothing on its claim.

### B. *Adversary Proceeding Against the Insurance Department*

█ In the present motion, the movant seeks to be granted leave to commence an adversary proceeding involving the Insurance Dept., which has been pending in the state court for over seven years. The state court has made substantial progress in determining the issues involved. Not only has the state court determined the issue of liability, it has also ruled on several appeals which addressed Neu's argument based on fraud and his argument that the N.Y. Ins. Law § 1101 is unconstitutionally vague. On July 7, 1992, the New York Court of Appeals dismissed Neu's latest appeal "upon the ground that the order appealed from does not finally determine the proceeding within the meaning of the Constitution." *People v. American Motor Club, Inc.,* 80 N.Y.2d 893, 587 N.Y.S.2d 909, 600 N.E.2d 636 (N.Y.1992). Accordingly, any remedy Neu may have lies in the state court where the issue is still pending. By reason of the foregoing, it is the opinion of this Court that Neu is required to continue his efforts in the state court and therefore, this Court will abstain from subjecting itself and its jurisdiction from the issues still pending there. *See, In re Shop & Go, Inc.,* 124 B.R. 915, 917 (Bankr.M.D.Fla.1991) (discretionary abstention was warranted

---

**2.** Section 1123(b)(4) permits a plan to "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."

were the state court had made substantial progress in determining the issues involved and was ready, willing, and able to schedule the case for trial).

 28 U.S.C. § 1334(c)(1) grants this Court the discretionary power to abstain "in the interest of justice, or in the interest of comity, with State Courts or respect for State law ... from hearing a particular proceeding ... related to a case under title 11." *See, In re Keyco, Inc.*, 49 B.R. 507, 509 (Bankr.E.D.N.Y.1985). Abstention is an "extraordinary and narrow exception" to the federal court's duty to adjudicate a controversy properly before it. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959), *reh'g denied*, 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 93 (1959). In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–15, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976), *reh'g denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976), and *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 19–27, 103 S.Ct. 927, 938–42, 74 L.Ed.2d 765 (1983), the Supreme Court identified six factors bearing on when this "extraordinary and narrow exception" should be invoked where there are concurrent state and federal court proceedings: (1) convenience of the federal forum; (2) avoidance of piecemeal litigation; (3) the order in which the courts obtained jurisdiction; (4) whether either court has assumed jurisdiction over property; (5) the source of law for decision; and (6) whether the state court can adequately protect the rights of the party seeking federal jurisdiction. *See, Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 602–03 (2d Cir.1988). No single factor is necessarily decisive; the court should carefully balance the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 16, 103 S.Ct. at 937.

The factors a bankruptcy court should consider when deciding whether to abstain pursuant to § 1334(c)(1) have been articulated as follows:

(1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. Sec. 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of the asserted "core" proceeding, (8) the feasibility of severing state law claims or bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy judge's] docket, (10) the likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceedings of nondebtor parties.

*In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987).

As the Bankruptcy Court noted in *In re Hughes–Bechtol, Inc.*, 107 B.R. 552 (Bankr. S.D.Ohio 1989):

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State Court would clearly serve an important countervailing interest."

*Id.* at 559 (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 813, 96 S.Ct. at 1244). *See also, Nationwide Roofing & Sheet Metal, Inc.*, 130 B.R. 768, 778 (Bankr.S.D.Ohio 1991).

"It is without doubt that to permit these actions to proceed in several different fed-

eral and state forums would have a certain disastrous effect on this entire reorganization process." *In re Hillsborough Holdings Corp.*, 123 B.R. 1004, 1013 (Bankr. M.D.Fla.1990). This Court finds that relitigating identical issues in two different forums would create a chaotic situation that may produce inconsistent litigations. *Id.* "Equitable relief [by the bankruptcy court] would be improper where ... the bankruptcy court is asked to adjudicate a matter which has been fully litigated in another forum." *Margolis v. Nazareth Fair Grounds & Farmers Mkt., Inc.*, 249 F.2d 221, 224 (2d Cir.1957).

The state court action raises no federal question, does not arise under the Constitution, laws, or treaties of the United States, does not involve an admiralty or maritime claim, and the parties are not of diverse citizenship. *Shop & Go*, 124 B.R. at 917. The action by the State of New York on behalf of the Insurance Dept., commenced in 1985, involves purely issues of state law. No issues of federal law have been raised in the plaintiff's claims. In fact, this motion could not have been filed in federal court if it was not for the pending bankruptcy case. In addition, there is no issue pending in the state court action that this Court can uniquely or specially determine in furtherance of the administration of AMC's bankruptcy case.

If the state court were called upon to determine peculiar issues of bankruptcy and commercial law with which a bankruptcy court has expertise and familiarity, it might be said that the administration of the Debtor's bankruptcy case would be better served by having the action brought before a bankruptcy judge. *Shop & Go*, 124 B.R. at 917. However, nothing of the sort is applicable here, inasmuch as the state court action does not involve any such issues. Just the opposite is the case here; this Court has no special knowledge or expertise regarding New York insurance laws that are involved in the present case.

In short, all equitable grounds weigh in favor of permitting the state court action where a speedy and just determination can be had. Although this court should exercise its discretion carefully and should defer to other courts when this court has jurisdiction only in extraordinary situations, this is such an extraordinary situation. Plainly, deferring to the state court here is what is best to ensure an economical and expeditious administration of the debtor's estate.

*Id.* This Court recognizes that in the interests of justice, comity and judicial economy, it would be best for this controversy which arises solely under state law, to be disposed of in state court.

The Neus' argument that fraud was involved in obtaining the state court judgment was raised and rejected by both the Supreme Court of the State of New York and the Appellate Division. As discussed above, the Appellate Division in *"AMC–II"* denied Neu's motion to supplement the record or remand the appeal despite alleged new evidence, the Altruda Deposition. Subsequently, the Supreme Court in the Gangel–Jacob Decision denied Neu's cross-motion and rejected Neu's argument that the Richardson and Silbermann orders should be vacated in light of the Altruda Deposition.

Similarly, the Neus' argument that the New York insurance law is unconstitutionally vague has also been addressed and rejected several times by the New York state courts. The Silbermann Decision, *"AMC–II"* and *"AMC–III"* all rejected this argument. Furthermore, the Court of Appeals dismissed Neu's appeal from the "AMC–III" decision. According to the Court of Appeals, there was no constitutional issue for the Court to review. *People v. American Motor Club, Inc.*, 80 N.Y.2d 893, 587 N.Y.S.2d 909, 600 N.E.2d 636 (N.Y.1992).

It is important to note that Neu himself appeared in the prior state court actions on behalf of AMC. It is apparent that each argument the Neus seek to raise in an adversary proceeding here in this Court has already been advanced, either by AMC or Neu himself, and decided in the state court. Therefore, this Court must give full faith and credit to the decisions of the New

York State Courts. 28 U.S.C. § 1738.[3]

### C. *The Remaining Two Adversary Proceedings*

■ Finally, the Neus claim that only they can bring the adversary proceeding against First National, Michael York, Sam Ford, and others, because they alone have the knowledge to successfully pursue claims against third parties. However, as stated above, the Committee has been appointed to be a party in all pending litigation. There is no reason to assume that the Neus would be more successful in litigating the claims than the Committee. Any special information the Neus and their attorney possess should be shared with the Committee which is authorized to bring all actions on behalf of the Debtor. Additionally, the likelihood of any recovery against Michael York, Sam Ford and others for conversion of a constructive trust upon AMC's assets held by Automobile Maintenance Contracts, Inc.–L.A. through adversary proceedings is minimal since more than four years have passed and the funds may not be traceable.

Accordingly, for the foregoing reasons, the Neus' request to be granted leave to commence the foregoing adversary proceedings and to appoint Rosner & Goodman, Esqs. as special counsel to prosecute these adversary proceedings on behalf of AMC is denied.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION

---

**3.** "The records and judicial proceedings of any ... State ... shall have the same full faith and credit in every court within the U.S. ... as they have by law or usage in the courts of such State...." 28 U.S.C. § 1738.