In re Michael E. GRANOFF, Debtor.

The Fowler & Huntting
Company, Plaintiff,

v.

Michael E. Granoff, Defendant.

Bankruptcy No. 97–32607.

United States Bankruptcy Court,
D. Connecticut.

Dec. 20, 1999.

Sean W. Gilligan, Pepe & Hazard, LLP, Hartford, Connecticut, for plaintiff.

Alexander Scheirer, Scheirer & Geller, New Haven, Connecticut, for defendant.

## MEMORANDUM OF DECISION ON MOTION FOR ABSTENTION

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

This opinion addresses the propriety of this Court abstaining from hearing this dischargeability adversary proceeding in favor of an adjudication of issues of fact and state law in a pending Connecticut Superior Court civil action. As explained hereafter, this Court will abstain at this time from further proceedings in connection with this adversary proceeding.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter, or to abstain therefrom, on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2)(L).

## III. PROCEDURAL BACKGROUND

This bankruptcy case was commenced on June 30, 1997, through the Debtor's filing of a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Prior to the commencement of the Debtor/Defendant's bankruptcy case, the Fowler & Huntting Company (hereafter, "Fowler & Huntting") commenced a civil action in the Connecticut Superior Court, styled *The Fowler & Huntting Co. v. Granoff's Wholesale Fruit Inc. et al.*, Case No CV 94 0151660S (hereafter, the "State Action"), in which Michael E. Granoff—the Defendant here—along with Bruce J. Granoff and others, were named as co-defendants.

Fowler & Huntting instituted this adversary proceeding on October 2, 1997, through the filing of a Complaint (hereafter the "Complaint") seeking a determination and declaration of nondischargeability pursuant to Bankruptcy Code Sections 523(a)(2), (4) and (6). On August 9, 1999, Fowler & Huntting filed *The Fowler & Huntting Company's Motion for Abstention Pursuant to 28 U.S.C. § 1334(c)(1)* (hereafter, the "Motion"), Doc. I.D. No. 53, requesting that this Court abstain from adjudicating this adversary proceeding in favor of the pending State Action. On October 22, 1999, the Defendant responded to the Motion by written objection, Doc. I.D. No. 64 (hereafter, the "Objection"). A hearing on the Motion and the Objection was held on December 8, 1999.

## IV. FACTUAL BACKGROUND

The following facts are undisputed and/or are determined by the Court through review of the files and records of this case, including a *Revised Complaint* dated January 11, 1995, filed in the State Action.[1]

---

1. This Revised Complaint was attached to the Objection.

The State Action is founded upon the following allegations. From approximately May 1992 through February 1994 (hereafter the "Sale Period"), Fowler & Huntting sold fresh fruit, vegetables and other produce to Granoff's Wholesale Fruit, Inc. (hereafter, "Granoff's, Inc.")[2], which distributed produce at wholesale. During the Sale Period the Debtor–Defendant was an employee and officer of Granoff's, Inc. In connection with the sale of produce, Fowler & Huntting generated an invoice for each order received from Granoff's, Inc., listing the type and quantity of each ordered item (hereafter, the "Invoice(s)"). On occasions during the Sale Period, Granoff's, Inc. would reject some of the items listed on an Invoice. When this happened Fowler & Huntting's driver was required to (i) mark the rejected items on the Invoice, (ii) reload such items onto Fowler & Huntting's delivery truck and (iii) return such items to Fowler & Huntting's warehouse. On numerous occasions during the Sale Period the Debtor and/or other employees of Granoff's, Inc. (hereafter, the "Co–Defendants"), and/or Fowler & Huntting's driver, marked on certain Invoices that items were rejected and returned to Fowler & Huntting when in fact such items (hereafter, the "Retained Produce") were kept by the Debtor and/or the Co–Defendants. The Debtor and/or the Co–Defendants paid Fowler & Huntting's driver cash equal to one half of the invoiced value of the Retained Produce. The cash paid by the Debtor and/or the Co–Defendants to Fowler & Huntting's driver for the Retained Produce was never remitted to Fowler & Huntting.

At the core of the State Action is an assertion that as a result of the "theft" of Fowler & Huntting's produce, Fowler & Huntting was intentionally, maliciously and unlawfully deprived of its property and suffered financial harm. More specifically, the Plaintiff asserts in the State Action that theft of Fowler & Huntting's produce constitutes a larceny, which makes the Debtor and other Co–Defendants liable for (i) damages at common law, (ii) treble damages under Connecticut General Statutes § 52–564, and (iii) actual damages, punitive damages and attorney's fees under the Connecticut Unfair Trade Practices Act. In the adversary proceeding before this Court the Plaintiff claims that the debt to Fowler & Huntting arose as a result of Debtor's fraud, larceny, and wilful and malicious conduct, and is therefore nondischargeable under 11 U.S.C. §§ 523(a)(2), (4) and/or (6).

The Debtor asserts, *inter alia,* that Fowler & Huntting's *actual* financial damages of $138,000 have been or will be paid—$128,000.00 by the parent of another Co–Defendant, with the $10,000.00 balance to be paid by two Granoff's, Inc. employees. Objection at page 5, ¶ 5. Fowler & Huntting acknowledges receipt of some payment from non-Debtor parties, but continues to seek additional relief from the Debtor and his Co–Defendants in the form of (i) actual damages, punitive damages, attorney's fees under the Connecticut Unfair Trade Practices Act and (ii) treble damages under Connecticut General Statutes § 52–564.

A bankruptcy case concerning Bruce Jay Granoff—a relative of the Debtor here—is currently pending in the Bridgeport Division of this Court (Case No. 94–50610). In that case Fowler & Huntting commenced a dischargeability proceeding (Adv.Pro. No. 94–5167) (hereafter the "Bridgeport Adversary Proceeding") which is similar, if not identical, to the one at bar.[3] On May 17, 1999, Chief United

---

**2.** The Debtor represents that the correct name for "Granoff's Wholesale Fruit, Inc." is "Granoff's Wholesale Fruit & Produce, Inc.", *see* Objection at p. 5, ¶ 4, a corporate entity which he alleges "received a [Chapter 7] discharge" in this Court. To the contrary, and consistent with Section 727(a)(1) (limiting Chapter 7 discharge to individuals), there is no such record in this Court.

**3.** At the hearing held on December 8, 1999, Debtor–Defendant Michael E. Granoff's attorney, who also represented Bruce Jay Granoff in the Bridgeport Adversary Proceeding, ac-

States Bankruptcy Judge Alan H.W. Shiff, upon consideration of his own motion pursuant to 28 U.S.C. § 1334(c)(1), and over the objection of Fowler & Huntting, ordered abstention in the Bridgeport Adversary Proceeding. In light of the abstention ordered by Chief Judge Shiff in the Bridgeport Adversary Proceeding, and "[i]n order to streamline all of the pending State Court and Bankruptcy Court actions", Fowler & Huntting now moves this Court to "follow its sister Court in Bridgeport, [and] abstain and remand this action to the State Court." Motion at p. 6, ¶ 11. The Debtor counters that abstention is unwarranted, due to, *inter alia,* Fowler & Huntting's alleged illicit State Action agenda—"to reap a windfall in damages substantially beyond those allegedly suffered, even to generate attorney's fees which would, by any standard of measure, serve to shock one's conscience." Objection at p. 3, ¶ 7.

## V. DISCUSSION

Section 1334(c)(1) of Title 28, United States Code, provides in relevant part:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in a case related to a case under Title 11.

28 U.S.C. § 1334(c)(1) (1999).

■ Abstention under Section 1334(c)(1) is an extraordinary exception to the general rule that a federal court has the duty to adjudicate a controversy properly before it, leaving a limited sphere of cases in which discretionary abstention may ·be granted. *See, e.g., In re Birdsboro Ferrocast Inc.,* 153 B.R. 154, 155 (Bankr.E.D.Pa. 1993); *In re Weinberg,* 153 B.R. 286, 293 (Bankr.D.S.D.1993); *In re West Coast Video Enterprises, Inc.,* 145 B.R. 484, 488 (Bankr.E.D.Pa.1992); *In re American Motor Club, ·Inc.,* 149 B.R. 317, 323–24 (Bankr.E.D.N.Y.1993). The boundaries of this limited sphere have traditionally been regarded as more restrictive in the types of dischargeability determinations enumerated in Section 523(c)—*e.g.* those under subsections (a)(2), (4), and (6) of Section 523—where Bankruptcy Court jurisdiction is generally *perceived* to be exclusive of the state courts. *See, e.g., In re Caranci,* 228 B.R. 777, 779 (Bankr.M.D.Fla.1998) ("... no court but the Bankruptcy Court where the case of the debtor is pending is competent to determine dischargeability or nondischargeability of a specific debt under these exceptions.").[4]

■ Nevertheless, in enacting Section 1334(c)(1) Congress intended "that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987). *See also In re Caranci,* 228 B.R. 777, 778

knowledged that the only difference between the New Haven and Bridgeport Adversary Proceedings was the identity of the defendants.

4. This Court continues to question whether the federal District Courts indeed enjoy exclusive jurisdiction over Section 523(c) adversary proceedings. *Cf. First American Title Insurance Company v. Eberhart (in re Eberhart),* 214 B.R. 59, 62 n. 2 (Bankr.D.Conn.1997). Granted, the language of Section 523(c)—"the debtor shall be discharged ... unless ... *the court* determines...." (emphasis supplied)— could be read to imply that a section 523(c)

action must be commenced in the federal court. However, "court" is not a defined term under the Code, and could logically refer to a state *or* federal court. More fundamentally, neither Section 523(c) nor any other provision of Title 11 explicitly purport to convey jurisdiction; rather, bankruptcy jurisdiction flows directly from the terms of Section 1334 of Title 28. Section 1334(b)(1) states unambiguously that the District Court has "original *but not exclusive* jurisdiction of all civil proceedings arising under title 11...." (emphasis supplied). Section 523(c) actions are civil proceedings arising under Title 11.

(Bankr.M.D.Fla.1998). Yet this Court's exercise is discretionary only within the bounds of Section 1334(c)(1)'s permissible abstention goals—the interest of justice, the interest of comity with State courts, and/or respect for State law.

■ In assessing whether abstention serves these statutory goals, federal courts have traditionally analyzed a number of specific factors. *See, e.g., In re Chicago, Milwaukee, St. Paul, and Pacific R.R.,* 6 F.3d 1184 (7th Cir.1993); *In re Naugatuck Dairy Ice Cream Co.,* 106 B.R. 24, 28–29 (Bankr.D.Conn.1989); *In re Foster,* 105 B.R. 746, 749–50 (Bankr.N.D.Ga.1989). As applicable to the instant proceeding, these factors include: (1) the presence, status and nature of a related proceeding commenced in state court, (2) whether the adversary proceeding could have been initiated in federal court absent bankruptcy jurisdiction, (3) the effect of abstention, or lack thereof, on the efficient administration of the bankruptcy estate, (4) the extent to which state law issues predominate, (5) whether the state court action can be timely adjudicated, (6) whether abstention would prevent duplicative litigation, (7) the danger of inconsistent rulings, (8) the difficult or unsettled nature of the applicable law, (9) the substance rather than the form of an asserted "core" proceeding, (10) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (11) the burden on the bankruptcy court's docket, (12) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties, and (13) the presence in the proceeding of non-debtor parties.

■ Consideration of these factors militates strongly in favor of deferring to the Connecticut Superior Court for an initial adjudication of the underlying issues in this adversary proceeding. The State Action is a mature pending litigation, and involves the facts and underlying legal issues raised in this adversary proceeding. Although the ultimate determination of dischargeability is exclusively a federal law concept, subsidiary—and perhaps preclusive—state law issues predominate in this bankruptcy proceeding. Connecticut's Civil Larceny Statute and Unfair Trade Practices Act, as well as its common law of contract, conspiracy, fiduciary duty, and intentional tort, are arguably important components of both the State Action and this proceeding. Each of these remedial legal schemes has spawned an intricate, complex, and still-developing body of state law that is, by all rights, the primary province of state *fora.* Each alleged scheme represents a different area of developing jurisprudence outside this Court's primary area of expertise. Considerations of comity and respect for state law therefore dictate that this Court defer to the state courts of Connecticut for interpretations of its common law and state statutes.

It further appears that the Connecticut Superior Court is well-equipped to handle this action on a timely basis. In fact, the Superior Court has assigned the matter to the complex litigation docket, and thus apparently has more judicial resources available to it than this Court. Likewise, abstention in this case will minimize, if not prevent, duplicative litigation. The same witnesses, exhibits, and testimony are likely to be presented in the State Action, and arguments made there would be made here. Counsel for the Plaintiff and Defendant in this proceeding also represent the Plaintiff and Defendants in the State Action. There is no evidence of forum shopping by the Movant. It would waste the parties' and the Courts' time and resources[5] to try the same evidence and is-

---

5. This Court's time and resources have already been wasted by the Debtor, who has been defaulted for failure to plead or otherwise defend on two occasions in this adversary proceeding. Doc. I.D. Nos. 10 and 28. Following the entry of each default the Debtor filed a Motion to Vacate Default, Doc. I.D. Nos. 15 and 34. Both were granted after

sues twice.[6] Finally, by combining the litigation in one forum, the State and Federal Courts will avoid the possibility of inconsistent rulings on the evidence, law and the ultimate judgment. For these reasons this Court finds unequivocally that abstention under the circumstances serves the interest of justice.

As noted in the text accompanying footnote 4 of this Memorandum of Decision, this Court is cognizant that the issue of dischargeability or nondischargeability of a debt is viewed by most courts as within the exclusive jurisdiction of the Bankruptcy Court. As noted in footnote 4, this Court questions that conclusion as a matter of law. But there can be no doubt that the federal court is well-equipped through experience to make necessary and ultimate determinations of federal law as to dischargeability, owing to the bankruptcy courts' *de facto* exclusive jurisdiction under Section 523(c). For this reason, the abstention that this Court will order shall provide for a stay of this proceeding until such time as the Connecticut Superior Court adjudicates the issues presently before it in the State Action. At that time, further proceedings in this Court—presumably aided by the Superior Court adjudication, through collateral estoppel[7] or other issue preclusive doctrine—will be entertained, leading to an ultimate disposition of this adversary proceeding.

## VI. CONCLUSION

For the foregoing reasons, this Court will abstain from further proceedings in

connection with this adversary proceeding, allowing the Connecticut Superior Court to fully adjudicate the State Action prior to judgment or other disposition in this Court. An appropriate Order of Abstention will enter this same date.

## ORDER OF ABSTENTION

The above-captioned matters having come on for hearing before this Court; and the Court having this day issued its *Memorandum of Decision on Motion for Abstention,* in accordance with which this Court hereby

**ABSTAINS** from and **STAYS** further proceedings in this adversary proceeding, to allow the Connecticut Superior Court to fully adjudicate a civil action between the parties (Docket No. CV 94 0151660S), at the conclusion of which this Court shall entertain further proceedings leading to judgment or other final disposition of this adversary proceeding.

---

hearings, but each was attended by sanctions totaling $500.00. The Debtor's assertion that the essence of Fowler & Huntting's agenda in the State Action is "to generate attorney's fees which would, by any standard of measure, serve to shock one's conscience", Objection at p. 3, ¶ 7, rings hollow when viewed against his own litigation-inducing conduct in this proceeding.

6. The parties estimate the trial of the instant adversary proceeding in this Court will consume approximately three days.

7. *See generally Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (confirming that collateral estoppel is available to litigants in the context of dischargeability proceedings under 11 U.S.C. § 523(a)); *First American Title Insurance Company v. Eberhart (In re Eberhart),* 214 B.R. 59, 62 (Bankr.D.Conn.1997) (discussing collateral estoppel effects of state court adjudications).